**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis SMITH, Defendant–Appellant.**

No. 87–3158.

United States Court of Appeals,
Eleventh Circuit.

March 25, 1988.

John S. Crompton, Tampa, Fla., for defendant-appellant.

Robert W. Merkle, U.S. Atty., Terry Furr, Robert T. Kennedy, Asst. U.S. Attys., Tampa, Fla., Mervyn Hamburg, U.S. Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before HILL and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case concerns a direct appeal from a criminal conviction. On October 31, 1986, Dennis Smith flew from Newark, N.J. to the St. Petersburg–Clearwater International Airport in Florida. At the airport, Drug Enforcement Agency (DEA) agents, acting on information received from a Newark DEA agent, stopped Smith after he deplaned. Smith eventually handed over an envelope containing 60 vials of crack cocaine to the DEA agents.

On January 6, 1987, Smith was convicted by a jury of knowingly and intelligently possessing with intent to distribute five grams or more of a mixture containing cocaine base. On January 16, 1987, the United States District Court for the Middle District of Florida denied Smith's renewed motion for judgment of acquittal and new trial. On March 5, 1987, the district court sentenced Smith to five years in prison plus four years of post-confinement monitoring. Smith appeals the district court's (1) failure to give a requested entrapment instruction, (2) determination that the statutory reference, 21 U.S.C.A. § 841(b)(1)(B)(iii), to "mixture" was not vague and thus Smith properly was sentenced pursuant to the statute, and (3) imposition of post-confinement monitoring.

## I. Entrapment Instruction

Smith requested that the district court instruct the jury as to an entrapment defense. The district court concluded that Smith was not entitled to an entrapment instruction. We affirm.

In *United States v. Parr*, 716 F.2d 796, 802–03 (11th Cir.1983) (citations omitted), this Court recognized that

[t]he entrapment defense provides a basis for acquittal where the government implants in the mind of an innocent person the disposition to commit the committed criminal acts....

Entrapment is an affirmative defense, evidence of which must be presented before the issue properly is raised. The defendant has the initial burden of producing evidence ... showing government involvement or inducement.

The sufficiency of the evidence proffered to raise the defense of entrapment is a question of law for the court in the first instance. Only after the defendant has sustained his initial burden does the issue of entrapment become a question of fact for the jury. The law is clear that in order to meet his burden defendant must come forward with "more than a scintilla" of evidence that " 'the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.' "

In determining the sufficiency of the evidence to raise the jury issue, the court

should view the evidence in the light most favorable to the defendant.

■ In the present case, Smith testified that Wyatt Davis convinced him to bring the crack cocaine to Tampa because Smith's common-law wife more likely would yield custody of their child if Smith furnished his common-law wife with drugs. In his testimony, Smith described Davis only as an "alleged friend." *See* R2:100, 104, 108, 117. The trial record is barren as to Davis' relationship, if any, with a law enforcement organization. Consequently, the district court properly determined that Smith was not entitled to an entrapment instruction. *See United States v. Garcia,* 546 F.2d 613, 615 (5th Cir.) ("Entrapment cannot result from the inducements of a private citizen but must be the product of conduct by governmental agents."), *cert. denied,* 430 U.S. 958, 97 S.Ct. 1608, 51 L.Ed.2d 810 (1977); *see also United States v. Fernandez,* 837 F.2d 1031, 1035 (11th Cir.1988) ("A defendant is entitled to have the court instruct the jury on his defense theory only if that theory has an evidentiary foundation and the requested instruction presents a cognizable legal defense.").

## II. *Mixture*

The jury convicted Smith as charged in the indictment with "knowingly and intentionally possess[ing] with intent to distribute 5 grams or more of a mixture containing cocaine base, a Schedule II narcotic drug controlled substance." The government's evidence at trial established that Smith possessed 60 vials of crack cocaine and that the weight of the mixture of cocaine base, procaine base, and a trace amount of sodium bicarbonate contained in the 60 vials was 9.2 grams. Gary Alexander, a DEA chemist, testified that, based on his testing of the purity levels in 40 of the 60 vials, the cocaine content was 5.1 grams of the 9.2–gram mixture. Alexander testified that the 5.1–gram figure for cocaine content had a margin of error of three to five percent. Based on this margin of error, the cocaine content could be less than five grams. Smith challenges his

conviction and sentence, arguing that the definition of mixture is too vague and that, because of this vagueness, he may not have possessed more than five grams. This contention is without merit.

■ We note from the outset that even if Smith is correct his conviction stands. Specifically, 21 U.S.C.A. § 841(a)(1) makes it an unlawful act for any person knowingly or intentionally to possess with the intent to distribute a controlled substance, but puts no quantity requirement on the amount of controlled substance possessed. *See United States v. Simmons,* 725 F.2d 641, 643 (11th Cir.1984) ("The statute makes it a crime for a person to possess with intent to distribute a controlled substance.... [T]he crime can be proved without any consideration of the amount involved...."). In addition, the jury initially determined that Smith was guilty of possession with intent to distribute a mixture containing a cocaine base. *See* R2:119. After determining Smith's guilt, the jury, by way of a supplemental report as to the verdict, "unanimously found that the quantity of the mixture containing cocaine base was 5 grams or more of a mixture containing cocaine base." *See* R2:119–20.

The amount involved is relevant to punishment only. Section 841(b)(1)(B), entitled "Penalties," provides:

[A]ny person who violates subsection (a) of this section shall be sentenced as follows:

. . . .

(B) In the case of a violation of subsection (a) of this section involving—

. . . .

(iii) 5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

. . . .

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years....[1]

■ We cannot agree with Smith's argument that the vagueness of a definition of

---

1. Smith was sentenced to the statutory minimum of five years.

mixture makes the statute constitutionally infirm. The statutory language of the statute is clear, not vague. The purity of the mixture is not the determinative factor. Rather, punishment here requires that (1) the weight of the mixture (here, a mixture of cocaine base, procaine base, and a trace amount of sodium bicarbonate) itself meets or exceeds five grams, and (2) that cocaine base be a component of the mixture. Absent a clearly expressed legislative intent to the contrary,[2] *see Albernaz v. United States*, 450 U.S. 333, 336, 101 S.Ct. 1137, 1140, 67 L.Ed. 275 (1981), we take the plain meaning of "mixture" as conclusive. In the present case, the mixture which contains cocaine base weighs 9.2 grams and this weight exceeds the 5-gram requirement of Section 841(b)(1)(B)(iii). Consequently, the district court properly determined that the penalty provision of Section 841(b)(1)(B)(iii) applied to Smith.

### III. *Post–Confinement Monitoring*

On October 27, 1986, Congress passed the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207. One provision of that Act amended the penalties provision of 21 U.S.C.A. § 841(b). As applies to the present case, Section 841(b)(1)(B) (emphasis added) provides: "Any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of *supervised release* of at least 4 years in addition to such term of imprisonment...."

On March 4, 1987, the district court imposed the following sentence on Smith: "5 (FIVE) YEARS plus a 4 (FOUR) YEAR Supervised Release, Special Parole Term or Probation Period which ever [sic] is determined to be the appropriate post confinement discription [sic]."

On November 1, 1987, the new sentencing guidelines went into effect and the

concept of supervised release (imposed by trial judges) became law. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat.1987, *amended by* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, 99 Stat. 1728. On that date, the Parole Commission and the concept of a "special parole term" were abolished. On that date, all statutory references to "special parole term" were replaced by references to "supervised release."

As a result of a flaw in congressional draftsmanship, when Smith was sentenced in March 1987, the concept of "supervised release" required to be imposed by Section 841(b)(1)(B) had yet to become law. On this basis, Smith challenges the post-confinement monitoring part of his sentence.

The Fifth Circuit has recently addressed a similar issue. *United States v. Byrd*, 837 F.2d 179 (5th Cir.1988). In *Byrd*, the defendant pleaded guilty to violating 21 U.S.C.A. § 841(a) and 21 U.S.C.A. § 845a (crime of drug distribution done near a school). The district court's amended sentence of June 22, 1987 included a six-year period of supervised release. The Fifth Circuit held that the district court was not authorized to impose a period of supervised release. The Court reasoned, "[B]efore November 1, 1987, sections 841(b) and 845a(a) mandated special parole terms.... After November 1, 1987, those statutes mandated terms of supervised release in accordance with 18 U.S.C. § 3583 in lieu of special parole terms." *Id.* at 181.

In a footnote, the Fifth Circuit recognized that the language in Section 841(b)(1)(B) permitted "supervised release." The Court rejected the idea that "supervised release" was possible. Rather, the Court observed that the "more logical arrangement" would be to tie the effective date of use of supervised release to the effective date of the implementing statute

---

**2.** Indeed, the legislative intent supports our holding that the plain meaning of "mixture" is conclusive. The statement by the House Judiciary Committee concerning penalties for major traffickers applies with equal force to penalties for managers of the retail level traffic. *See* H.R.Rep. No. 845 (part I), 99th Cong., 2d Sess. 12 (1986) ("The Committee's statement of quantities is of mixtures, compounds or preparations that contain a detectable amount of the drug—these are not necessarily quantities of pure substance."); *see also id.* at 17 ("All quantities are of a mixture, preparation or compound that contains a *detectable amount* of the particular substance." (emphasis in original)).

(i.e., November 1, 1987). The Court concluded that "the legislation history of the Sentencing Reform Act of 1984 clearly demonstrates that Congress intended that the imposition of supervised release be tied to the effective date of the supervised release implementing statute. In short, we are unconvinced that Congress intended to set Section 841(b) apart from the comprehensive statutory framework developed to replace special parole terms with supervised release." *Id.* at 181 n. 8. Consequently, the Court vacated the term of supervised release and remanded to the district court for resentencing "with the understanding that the former law, which mandated a special parole term, applies." *Id.* at 182.

 We agree with the Fifth Circuit's reasoning. We hold that clear congressional intent indicates that "supervised release" is tied to a November 1, 1987 date. Consequently, because Smith was sentenced before that date, Smith's sentence should include four years of a special parole term.[3]

Accordingly, we AFFIRM the conviction, VACATE the sentence as it relates to post-confinement monitoring, and REMAND to the district court for resentencing in accordance with this opinion.

---

**3.** We recognize that the governing statute in *Byrd* expressly referred to a "special parole term" at the time of Byrd's sentencing. In contrast, since its enactment on October 27, 1986, Section 841(b)(1)(B) has expressly referred to "supervised release." We agree with the government that this is a distinction without a difference. Congress clearly intended that a defendant be subject to post-confinement monitoring. The present case concerns the issue of who has responsibility to monitor the defendant after confinement. As noted in the text, we agree with the Fifth Circuit and determine that prior to November 1, 1987, the responsibility to monitor rests with the Parole Commission as reflected in the description "special parole term."