**STATE of Minnesota, Appellant,**

v.

**Carl (NMN) MOORE, Respondent.**

**No. C3–88–1015.**

Court of Appeals of Minnesota.

Nov. 15, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. County Atty., Minneapolis, for appellant.

William R. Kennedy, Hennepin County Public Defender, Philip Bush, Asst. County Public Defender, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and SHORT and HACHEY *, JJ.

## OPINION

SHORT, Judge.

Respondent Carl Moore was charged with possessing with an intent to distribute a controlled substance containing three or more grams of cocaine base. Moore moved to have the relevant statute declared unconstitutionally void for vagueness because the statute used the undefined term "cocaine base." The trial court granted respondent's motion and the state appeals. We disagree and reverse the trial court's ruling.

## FACTS

On February 15, 1988, members of the Minneapolis Police Department's Crack Enforcement Team, in possession of a valid search warrant, entered a house located in south Minneapolis. The officers observed respondent Carl Moore sitting on a bed in a front bedroom. Beside Moore was a .357 Magnum pistol and a plastic bag containing 40 small bundles of what the criminal complaint calls a "crack-like" substance. The officers also found $476.00 in small denominations on the bed and a large assortment of drug paraphernalia in the rooms of the house. The officers arrested Moore and seized the drugs and the other evidence.

The police department had the seized substance tested by the city chemist. She determined that the substance was crack-cocaine weighing 6.25 grams. The state charged Moore, pursuant to Minn.Stat. § 152.01, subds. 4 and 10, § 152.02, subd. 3(1)(d), § 152.09, subd. 1(1) and § 152.15, subd. 1(2) (1986), with intent to manufacture, sell or otherwise distribute a controlled substance. Two months later, in April of 1988, the state amended its complaint to include the charge of possession with the intent to sell a mixture of a controlled substance containing three or more grams of "cocaine base",[1] in violation of Minn.Stat. § 152.15, subd. 1(1)(i) (Supp. 1987), a new statute passed by the 1987 legislature. By thus amending the complaint, the state increased the severity level of the charged offenses against Moore from a level VI offense to a level VII offense for purposes of sentencing. See Minnesota Sentencing Guidelines V.

Moore tried to plead guilty to the original lesser charge, but the state would not accept his plea. Moore brought a motion, pursuant to Minn.R.Crim.P. 17.06, subd. 2(2)(c), to have the new statute under which he was charged declared unconstitutional. The trial court concluded the statute was unconstitutionally vague because the legislature had not defined the term "cocaine base" and because the meaning of that term is not apparent to a person of ordinary intelligence.

## ISSUE

Is Minn.Stat. § 152.15, subd. 1(1)(i) (Supp.1987) void for vagueness because it uses the undefined term "cocaine base?"

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. The only place that the term "cocaine base" appears in the statutes is in the penal provision, § 152.15, subd. 1(1)(i), which was added by the 1987 legislature.

## ANALYSIS

Minn.Stat. § 152.15, subd. 1 (Supp.1987) provides criminal penalties for conviction of possession with intent to sell specified controlled substances, including a "mixture containing three grams or more of cocaine base." Cocaine is defined in Minn.Stat. § 152.02, subd. 3(1)(d) (1986) as:

> (d) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

However, the legislature did not define the term "cocaine base." Moore argues, and the trial court concluded, that without a definition for that term, the statute is constitutionally infirm.

### I.

The construction of a statute is a question of law for the court, and is subject to *de novo* review on appeal. *Hibbing Education Association v. Public Employment Relations Board*, 369 N.W.2d 527, 529 (Minn.1985); *Matter of Welfare of M.J.M.*, 416 N.W.2d 142, 146 (Minn.Ct.App.1987). We therefore need not defer to the findings drawn by the trial court regarding the validity of Minn.Stat. § 152.15, subd. 1(1)(i) (Supp.1987).

One who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality. *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979), *Matter of Martenies*, 350 N.W.2d 470, 473 (Minn.Ct.App.1984) *pet. for rev. denied* (Minn. Sept. 12, 1984); *see also* Minn.Stat. § 645.17(3) (1986) (courts required to presume the legislature did not intend to violate the constitution of the United States or of this state). The power of an appellate court to declare a statute unconstitutional is to be exercised only when absolutely necessary and then with extreme caution. *Wegan v. Village of Lexington*, 309 N.W.2d 273, 279 (Minn.1981);

*City of Richfield v. Local No. 1215 International Association of Fire Fighters*, 276 N.W.2d 42, 45 (Minn.1979).

### II.

A criminal statute will not be found void for vagueness unless it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985); *State v. Skinner*, 403 N.W.2d 912, 915 (Minn.Ct.App.1987). The United States Supreme Court recently explained in *Kolender* the importance of the second requirement.

> Although the [void for vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect * * * "is ... the requirement that a legislature establish minimal guidelines to govern law enforcement."

*Kolender*, 461 U.S. at 357–58, 103 S.Ct. at 1858 (quoting *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)). Moore does not claim, nor could he claim, that the statute in question invites arbitrary enforcement. However, he argues that a person of average intelligence could not discern the meaning of "cocaine base" by reading the language of the statute. He notes that while the legislature has provided an extensive definition of cocaine, and also of other substances criminalized by the controlled substances statutes, it neglected to include a definition of "cocaine base." Moore claims that because the term is undefined, the ordinary person is kept guessing as to its meaning.

In deciding whether the term "cocaine base" renders the statute unconstitutional, we are guided by the well-settled rule that a statute, if it can be made constitutionally definite by a reasonable construction, must be given that construction by this court. *United States v. Harriss*, 347 U.S. 612,

618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *United States v. Thomas,* 567 F.2d 299, 300 (5th Cir.1978). Words of a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary. *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975). Indeed, where a statute is ambiguous, a construction which avoids constitutional conflict should be given, even though it is less natural. *United States v. Rivera,* 427 F.Supp. 89, 92 (S.D.N.Y.1977).

An undefined word or phrase renders a statute constitutionally infirm only when the meaning of that word or phrase is neither commonly understood nor established by judicial construction in other statutes. *See e.g., United States v. Delahoussaye,* 573 F.2d 910, 912–13 (5th Cir.1978); *Minnesota Wood Specialities, Inc. v. Mattson,* 274 N.W.2d 116, 119 (Minn.1978). In *United States v. Thomas,* 567 F.2d at 300, the federal appeals court affirmed the trial judge's conclusion that the word "silencer," used in a statute prohibiting the possession and transfer of certain firearms, was not so vague as to require a statutory definition in order to satisfy due process. The appeals court concluded that "silencer" had a commonly accepted meaning which should be used in construing the statute. A person of ordinary intelligence could therefore understand the form of conduct the statute was intended to prohibit. *Id.*

We think a similar level of general understanding may be attributed to the meaning of the words "cocaine" and "base." Moore introduces an artificial complexity into this case when he urges that "cocaine base" must be read as an indivisible phrase with an indeterminate meaning rather than as two words, each with an ordinary meaning. Moore does not dispute that cocaine has a clear meaning, as given in Minn.Stat. § 152.02, subd. 3(1)(d). The word "base," though not defined in the prohibited drug statutes, also has an ordinary meaning when used to describe a chemical substance. Webster's Dictionary defines "base" as "the chief active ingredient ... the predominating substance ... left as a residue on refining." Webster's 3rd New International Dictionary p. 180 (unabridged) (1986). The American Heritage Dictionary defines "base" as "[a] fundamental ingredient" or "chief constituent." The American Heritage Dictionary 160 (2d ed. 1982).

The legislature thus used the word "base" in accordance with its standard dictionary definition to describe the refined form of cocaine; chemically it consists of the cocaine molecule without a hydrogen-chloride molecule bonded to it. An ordinary person of average intelligence would not have been greatly helped if, instead of the term "cocaine base," the legislature had used the chemical formula for refined cocaine ($C_{17}H_{21}O_4$) to describe the substance in question. Although the street term "crack" might be more clear to some drug dealers, that term is less scientifically precise. Furthermore, the legislature has not used street terms to describe other controlled substances, even though terms such as "pot" or "horse" may be used more commonly by drug dealers than the words "marijuana" or "heroin."

We also note that other courts, when addressing issues involving the possession and sale of undiluted or crack cocaine, have been clear as to the meaning of "cocaine base." The defendant in *United States v. Smith,* 840 F.2d 886 (11th Cir.1988) challenged his conviction under a federal statute making it illegal to "knowingly and intentionally possess with intent to distribute 5 grams or more of a mixture containing cocaine base." *Id.* at 888; *see also* 21 U.S.C.A. § 841(a)(1)(1981). Smith alleged the definition of the word "mixture" was too vague and that, because of this vagueness, he may not have possessed more than five grams. The federal appeals court rejected Smith's argument, concluding that punishment under the statute merely required that the weight of the mixture meets or exceeds five grams, and "that cocaine base be a component of the mixture." *United States v. Smith,* 840 F.2d at 889. Although the definition of "cocaine base" was not specifically challenged, the *Smith* court necessarily assumed the term had a clear meaning in order to conclude that the statute was not vague. *See also*

*United States v. Collado–Gomez,* 834 F.2d 280, 280 (2nd Cir.1987) (equating the word "cocaine base" with "crack"); *United States v. Levy,* 703 F.2d 791, 795 (4th Cir. 1983) (identifying "pure cocaine" as "cocaine base").

While the legislature might have removed the slightest possibility of confusion by including a definition for the composite term "cocaine base" in the definition section of the prohibited drugs statutes, its failure to do so does not render Section 152.15, subd. 1(1)(i) constitutionally infirm. We think a person of average intelligence will understand that "cocaine base," the possession and sale of which evokes a greater criminal penalty than the possession and sale of the same quantity of other forms of cocaine, means pure cocaine in its undiluted chemical form. The word "cocaine," as Moore concedes, is adequately defined in Minn.Stat. § 152.02, subd. 3(1)(d). The word "base" can be understood for the purposes of this statute according to its common dictionary definition. Because "cocaine base" is not vague, and because the statute as a whole establishes adequate guidelines to govern law enforcement, we conclude that Minn.Stat. § 152.15, subd. 1(1)(i) satisfies due process requirements and is not void for vagueness under either the federal or the state constitution.

## DECISION

The term "cocaine base" is not so vague as to render Minn.Stat. § 152.15, subd. 1(1)(i) (Supp.1987) constitutionally infirm. The statute defines the offense for which the criminal penalty attaches with sufficient definiteness that ordinary people can understand what conduct is prohibited. The trial court is therefore reversed.

REVERSED.

RANDALL, J., dissents.

RANDALL, Judge, dissenting.

I respectfully dissent. I would affirm the trial court which found the term "cocaine base" insufficient to define a criminal offense and thus unconstitutionally vague.

The state originally charged appellant with intent to distribute a controlled substance, namely cocaine. To do so the state proceeded, as it always does in controlled substance charges, with a complaint alleging pertinent portions of four specific statutes. Minn.Stat. § 152.01, is a definitional statute; Minn.Stat. § 152.02 is the statute which declares what substances are prohibited; Minn.Stat. § 152.09 describes what acts break the law; and Minn.Stat. § 152.15 defines the penalties for violating the law.

Charges involving cocaine (whether possession, possession with intent to distribute, selling, et cetera), involve a selected reference to each of the four above described statutes. The same is true of marijuana, LSD, heroin and all other commonly or uncommonly known controlled substances.

When the 1987 legislature created a new crime involving the controlled substance "cocaine base," however, it failed to include a definition of cocaine base anywhere in Minn.Stat. §§ 152.01 or 152.02, where definitions and schedules relevant to Chapter 152 normally appear. The term "cocaine base" is mentioned only in the penal provision, Minn.Stat. § 152.15. Thus, the legislature simply provided a penalty concerning a substance it did not even define. In charging appellant with possession with intent to distribute cocaine base, therefore the state used the statutory references to cocaine as found in Minn.Stat. §§ 152.01 and 152.02 for the simple reason that none existed for cocaine base.[1]

---

1. The pertinent portion of the trial court's memorandum pointing out that the state in charging cocaine base attempted to get by with the definition of just cocaine, stated:

Now, in applying some specificity to the point the Court is making I'll first refer to the definition of cocaine as contained in Minnesota Statute 152.02 Subdivision 3 Sub (d), "Coca leaves, and any salt, compound, derivative, or preparation of coca leaves, including cocaine and ecgonine, e-c-g-o-n-i-n-e, the salts and isomers of cocaine and ecgonine, and the salts of their isomers." *It is interesting to note that not only the original Complaint in this case but the amended Complaint which has now been filed by the County Attorney in substitu-*

I disagree with the majority's conclusion that it is sufficient that the legislature mentioned cocaine base *only* in section 152.15. The penal portion of this package of four statutes which accompanies the charging of crimes involving a controlled substance does nothing, by itself, to tell anybody what cocaine base is. Even if cocaine base could be accurately guessed at by users and dealers, that would not be sufficient in Minnesota to save the statute from the definitional flaw recognized by the trial court. Minnesota does not have common law crime. If it is not spelled out as a statutory crime in this state, it is not against the law. Minn.Stat. § 609.015.

Since the legislature intended to make the possession and/or distribution of cocaine base a more severe crime than possession and/or distribution of cocaine, it was incumbent on the legislature to define cocaine base and insert the proper terminology in §§ 152.01 and 152.02 as needed.

If, as the majority concludes, it is sufficient merely to mention the word "cocaine base" in Minn.Stat. § 152.15, the penal provision, and nowhere else, why does not that logic apply to all controlled substances? Why did the legislature spell out with particularity drug definitions and schedules in Minn.Stat. §§ 152.01 and 152.02?

As the trial court inferred, it may have been mere oversight on the part of the 1987 legislature. Nevertheless, the legislature completely failed to define the term "cocaine base," and this failure renders the statute infirm.

The majority concludes that appellant introduces "an artificial complexity" into the case when appellant argues that cocaine base should be read as an indivisible phrase rather than as two distinct words. I find no support for the majority's argument other than speculation. I see the controlled substance in issue here better described by the indivisible phrase of cocaine base rather than splitting these two words into "cocaine" and then "base." As noted, the possession and/or distribution of cocaine is already against the law, and a definition of cocaine is set out in § 152.02, subd. 3(1)(d). Section 152.02 does not contain a definition of cocaine base, nor does it contain a definition of the word "base" and relate that specifically back to the definition of cocaine. It is clear to me that the legislature thought that cocaine base is a different and a more harmful drug than just cocaine, and meant to make distribution of cocaine base a separate crime with a more severe penalty. The legislature simply failed to take the next necessary step and insert into the law a definition of cocaine base.

The trial court made note of the confusion and disagreement over what is supposed to be meant by the undefined phrase "cocaine base" as it stands now in section 152.15.[2] This confusion is evident in the

---

tion of the amended Complaint charges the same definition under 152.02 Subdivision 3(1)(d) which I just read because, in fact, there's no definition under Statute 152.02 of cocaine base. That seems to me to be confusing in and of itself since the penalty provisions as amended in the 1987 legislature leaves the prosecutor with the same definition but a new controlled substance if you will. (The original complaint in this case refers to a criminal charge involving cocaine. The amended complaint in this case refers to a charge involving cocaine base.)

**2.** Portions of the trial court's reasoning are as follows:

Now, at the root of my conclusion here is that the term as used in a technical sense by the legislature in the particular statute here, cocaine base, does not have that technical or other special meaning. * * * The problem with the law now as it stands distinguishing

between cocaine being a level VI severity offense and cocaine base being a level VII severity offense charge is that it seems to this court that it clearly encourages arbitrary and discriminatory enforcement since there's no differentiation between the two narcotics. * * * "Persons of common intelligence must not be left to guess at the meanings of a statute nor differ as to its application." * * * The bottom line is that cocaine by definition is a crystalline alkaloid and cocaine base which supposedly is some, the court is assuming, more pure form of cocaine by way of a crystalline alkaloid or salt. * * * The court is taking the constitutional mandate of the vagueness doctrine and applying it to this case and after my law clerk and I spent approximately eight hours getting a migraine headache, we could not distinguish cocaine from cocaine base and the legislature was deficient in not providing us with that definition which simply could have been done by defining co-

appellant's case and the majority opinion. For instance, at oral argument appellant, in direct response to a question from the panel, said that the term "cocaine base" by definition has to include at least some cocaine. A short time later, appellant argued in response to a similar question that it would be chemically possible to have cocaine base without any cocaine in it. Because of the void in the definition statutes, there is no support for either proposition.

At one point, the majority states:

The legislature thus used the word "base" in accordance with its standard dictionary definition to describe the refined form of cocaine; chemically it consists of the cocaine molecule without a hydrogenchloride molecule bonded to it.

That is speculation. That definition of the word "base" is found nowhere in any stipulated facts, nowhere in Minn.Stat. §§ 152.01, 152.02, or any of the advisory comments thereto. That definition of "base" is found only in the opinion of the majority. I have no idea how the majority read the legislature's mind to assume that this complex definition, replete with chemists' terms such as hydrogenchloride molecule, was all contained in the word "base."

In another part of the opinion, the majority states:

We think a person of average intelligence will understand that "cocaine base," the possession and sale of which evokes a greater criminal penality than the possession and sale of the same quantity of other forms of cocaine, *means pure cocaine in its undiluted chemical form.*"

(emphasis added.) Thus, the majority must now be stating that "pure cocaine in its undiluted chemical form" equals "a cocaine molecule without a hydrogenchloride molecule bonded to it." Trial courts and appellate courts interpret statutes. Neither of us engage in chemical analysis. Nor should we assume what the legislature "might" do for a definition after consulting with experts. The legislature is free to add cocaine base to the schedule of controlled substances in § 152.02, and, if deemed appropriate, insert a definition of cocaine base into § 152.01. Appellate courts should not usurp the legislative function.[3]

I would affirm the trial court's conclusion that for lack of an adequate definition of cocaine base, the statute in question is unconstitutionally vague, and the prosecution is limited to charging appellant with a felony of use and/or distribution of cocaine.

---

caine base as to how it differs from cocaine being a crystalline alkaloid.
* * * [T]he court for all of the reasons heretofore cited and because there's no adequate definition or certainty as to what the difference is between cocaine and cocaine base, feels that the 1987 amendment does not pass constitutional muster and therefore under Rule 15.07 of the Minnesota Rules of Criminal Procedure the court is making a finding that there has been a thorough hearing and that the prosecution cannot introduce evidence sufficient to justify the submission of the offense charged to the jury and based on that finding, that Mr. Moore should be entitled to plead guilty to the sale of cocaine charge under 152.15, subd. 1(2). * * *

**3.** As our supreme court in *State v. Soto* cautioned:

From the earliest days of statehood this court has followed a long tradition of strictly construing penal statutes. A criminal offense should not be created by an uncertain and doubtful statutory construction. In the presence of any doubt, penal statutes are to be construed so as not to multiply felonies. *See United States v. Gideon,* 1 Minn. 292, 296 (Gil.226) (1856). The rule of strict construction of criminal statutes is essential to guard against the creation of criminal offenses outside the contemplation of the legislature, under the guise of "judicial construction." *State v. Mims,* 26 Minn. 191, 2 N.W. 492 (1879). *See also State v. Haas,* 280 Minn. 197, 159 N.W.2d 118, 121 (1968); *State v. End,* 232 Minn. 266, 45 N.W.2d 378, 382 (1950).

*State v. Soto,* 378 N.W.2d 625, 627–28 (Minn. 1985).