**UNITED STATES of America**

v.

**David R. BRUNDAGE, Defendant.**

**Crim. No. 87–0209.**

United States District Court,
District of Columbia.

April 3, 1989.

Thomas J. Motley, Asst. U.S. Atty., Washington, D.C., for the U.S.

Jeffrey S. Jacobovitz, Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending before the Court is a motion to correct sentence pursuant to Fed. R.Crim.P. 35(a) filed by defendant David R. Brundage. For the reasons articulated below, this motion will be granted.

### I.

On May 12, 1987, an indictment was returned charging defendant David R. Brundage with one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a) & 841(b)(1)(B)(ii)(II). On July 20, 1987 Brundage entered a conditional plea of guilty to this offense which, according to the indictment, occurred in the District of Columbia on or about April 23, 1987. On September 4, 1987 the Court sentenced defendant to a six-year term of imprisonment, a four-year term of supervised release to follow his incarceration, and a $50 victim assessment fine. On July 1, 1988 the court of appeals denied Brundage's appeal from

this Court's oral ruling denying his motion to suppress.

On January 31, 1989 defendant filed a *pro se* motion to correct his sentence. Citing two recent Fifth Circuit decisions—*United States v. De Los Reyes*, 842 F.2d 755 (5th Cir.1988) and *United States v. Byrd*, 837 F.2d 179 (5th Cir.1988)—Brundage contended that he should have been sentenced to a special parole term, rather than a period of supervised release, and that the term should have been only three years instead of four. On January 31, 1989 the Court issued an Order stating that defendant's position "appears to have merit" and directing the United States to file a response. After receiving the government's opposition, the Court appointed Jeffrey Jacobovitz, Esq. to file a reply brief on behalf of defendant because of "the importance of this matter." [1] *See* February 23, 1989 Order. Mr. Jacobovitz has complied with that request and this matter is now ripe for decision.[2]

## II.

There is no dispute that, had Brundage committed his crime after November 1, 1987, he would have been subject to a period of supervised release. On that date, certain provisions of the Sentencing Reform Act of 1984 went into effect and the concept of special parole was abolished. *See* 21 U.S.C. § 841(b)(1)(B) (1988) ("Any sentence imposed under this subparagraph shall, in the absence of a prior conviction, include a term of supervised release of at least 4 years"). It is also clear that, had Brundage committed his crime prior to October 27, 1986, he would have been subject to a three-year special parole term. *See* 21 U.S.C. § 841(b)(1)(B) (1985). Brundage's crime, however, was committed on April 23, 1987. To determine whether special parole or supervised release governs this time pe-

riod, the history of 21 U.S.C. § 841(b) must be briefly recounted.

Prior to October 1984, special parole terms were imposed in three circumstances under 21 U.S.C. § 841(b): for violations involving schedule I or II narcotic drugs a three year term applied, *see* 21 U.S.C. § 841(b)(1)(A) (1983); for substances in schedules I or II that were not narcotic drugs or for schedule III substances a two-year term applied, *id.* § 841(b)(1)(B); and for schedule IV substances a one-year term applied, *id.* § 841(b)(2). On October 12, 1984, however, the Sentencing Reform Act of 1984 was signed into law. *See* Public Law 98–473, 98 Stat.1987. In section 224 of the Act, Congress deleted the last sentences of each of these three sections, thereby eliminating the language that provided for special parole terms. 98 Stat. 2030.[3] Section 235(a)(1) provided, however, that these changes would not become effective until November 1, 1986. 98 Stat. 2031. On December 26, 1985 the Sentencing Reform Amendments Act of 1985 amended section 235(a)(1) to delay implementation of these changes further, until November 1, 1987. *See* Pub.L. 99–217, § 4, 99 Stat. 1728. On October 27, 1986 the Anti–Drug Abuse Act of 1986 became law. *See* Pub. L. 99–570, 100 Stat. 3207 *et seq.* Section 1002 of this Act altered 21 U.S.C. § 841(b) to provide for periods of supervised release for certain crimes. 100 Stat. 3207–2. In addition, section 1004(a) stated that the words "special parole term" should be replaced with "term of supervised release" wherever it appeared in the statute, 100 Stat. 3207–6, and, in section 1004(b), Congress provided that these amendments should not take effect until the sentencing guidelines became operative (November 1, 1987). *Id.*

Parsing this legislative stew, numerous appellate courts have recently held, since the time Brundage was sentenced,

---

1. Mr. Jacobovitz represented defendant in the criminal proceedings before this Court and during the appeal of this Court's ruling on his motion to suppress.

2. Actually, Mr. Jacobovitz filed a "motion to vacate sentence" rather than a reply brief. For

present purposes, the Court will treat this pleading as the requested reply brief.

3. Section 502 of the Act also made several substantive changes in 21 U.S.C. § 841(b), adding a new section 841(b)(1)(A) and redesignating the former sections.

that defendants who committed crimes between October 27, 1986 and November 1, 1987 should be sentenced to a special parole term rather than a term of supervised release. *See United States v. Byrd*, 837 F.2d 179, 181–82 (5th Cir.1988); *United States v. Smith*, 840 F.2d 886, 889–90 (11th Cir.1988); *United States v. De Los Reyes*, 842 F.2d 755, 758 (5th Cir.1988); *United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir.1988); *United States v. Molina–Uribe*, 853 F.2d 1193, 1997 (5th Cir.1988). These courts have noted that, although the Anti–Drug Abuse Act of 1986 abolished the concept of special parole and replaced it with supervised release, section 1004(b) of the Act provided that this change would not become effective until November 1, 1987. Because Brundage's crime occurred on April 23, 1987, the concept of supervised release could not be applied to him. Defendant is therefore correct (and the United States agrees) that this Court should have imposed a special parole term, rather than a period of supervised release, following his incarceration.[4]

■ The second question presented is the proper length of Brundage's special parole term. The United States argues that a four-year special parole term should be imposed because the Anti–Drug Abuse Act of 1986 "intended to increase the punishment for 'drug trafficking' crimes," the Act mandated a four-year period of post-incarceration monitoring, and the only portion of the Act that did not go into effect was the substitution of the words "supervised release" for the words "special parole." Opposition at 4 & n. 2. In *Byrd* the United States presented the identical argument which was rejected by the Fifth Circuit:

> The government's understandable, albeit mistaken, conception is a product of confusing statutory draftsmanship. Title I, Section 1002 of the Anti–Drug Abuse Act

of 1986 amended former section 841(b) by among other things, replacing the special parole term requirement with a term of supervised release. No specific effective date is mentioned in section 1002. Title I, Section 1004 of the Anti–Drug Abuse Act of 1986 replaced "special parole term" with "term of supervised release" each place the term appeared in the Controlled Substances Act and the Controlled Substances Import and Export Act. Section 1004 *expressly* ties the effective date of the amendments to the effective date of 18 U.S.C. § 3583, which contains the standards for the imposition of supervised release. The changes made by section 1004 include the relevant change made by section 1002. Moreover, tying the effective date of the change to the effective date of the implementing statute would seem the more logical arrangement. Finally, the legislative history of the Sentencing Reform Act of 1984 clearly demonstrates that Congress intended that the imposition of supervised release be tied to the effective date of the supervised release implementing statute. In short, we are unconvinced that Congress intended to set section 841(b) apart from the comprehensive statutory framework developed to replace special parole terms with supervised release.

837 F.2d at 181 n. 8 (emphasis in original). The Court agrees with this assessment that the four-year monitoring term contained in the Anti–Drug Abuse Act of 1986 became effective with the change to supervised release on November 1, 1987.[5] Defendant shall therefore serve a three-year special parole term—which was compelled by the law in effect on April 23, 1987, *see* 21 U.S.C. § 841(b)(1)(B) (1985)—following his incarceration.

---

**4.** This correction to Brundage's original sentence is not, by itself, significant. Although special parole and supervised release are not identical post-incarceration monitoring devices, any divergence is, as Judge Johnson observed in *Smith*, "a distinction without a difference." 840 F.2d at 890 n. 3.

**5.** In addition to the reasons given by the *Byrd* court, the rule of lenity (which applies to penalty provisions as well as substantive crimes, *see Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)) would also operate to impose a three-year term rather than the four years suggested by the United States.

## III.

For these reasons, it is

ORDERED that defendant's motion to correct sentence be and it hereby is granted; and it is

FURTHER ORDERED that the Judgment and Commitment Order dated September 4, 1987 is hereby corrected by striking the words "FOUR (4) YEARS of Supervised Release" and inserting in their place "THREE (3) YEARS of Special Parole."