UNITED STATES of America

v.

Moshe GOZLON–PERETZ, Appellant.

No. 89–5330.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Oct. 16, 1989.

Decided Jan. 25, 1990.

As Amended Feb. 6, 1990.

Pamela A. Wilk, Philadelphia, Pa., for appellant.

Samuel A. Alito, Jr., U.S. Atty., Michael V. Gilberti, Asst. U.S. Atty., Edna Ball Axelrod, Chief Appeals Div., U.S. Atty's. Office, Newark, N.J., for appellee.

Before BECKER, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal by Moshe Gozlon–Peretz challenges the imposition of a five-year term of special parole, as part of a sentence for a drug conviction, on the ground that in February 1987, when the offense was committed, it was not punishable by a special parole term. During the 1970's and 1980's, special parole became a staple of the penalty scheme prescribed by Congress for drug offenses. However, in amending 21 U.S.C. § 841(b) pursuant to the enactment of the Comprehensive Crime Control Act of 1984, Congress failed to provide for special parole in § 841(b)(1)(A), which defines the high volume drug crime for which appellant was convicted and sentenced.

Appellant acknowledges that in the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570 Tit. I (1986) ("the ADAA"), which amended the 1984 Act, Congress created an alternative to special parole—the so-called term of supervised release. However, appellant contends that Congress intended supervised release to be complementary to the Sentencing Reform Act's new guidelines sentencing regime, which did not become effective until November 1, 1987. Because the offense in question occurred in February 1987, appellant submits that he is not subject to a term of supervised release either.

The government responds that Congress intended the 1986 legislation, which was enacted on October 27, 1986 and had no effective date provisions, to become effective immediately. Such a reading, the government maintains, requires the imposition of special parole, not supervised release, in this case. We do not agree with the government's contention that an immediate effective date would resuscitate the moribund special parole sentencing option, but we do believe that Congress intended the supervised release provisions to become effective immediately. Accordingly, we will vacate the judgment of sentence, and remand to the district court with directions to vacate the sentence of special parole and

to impose a term of supervised release.[1]

## I.

## A.

The background facts are set forth in our opinion in *United States v. Levy*, 865 F.2d 551 (3d Cir.1989) (in banc). There, we vacated Gozlon–Peretz's sentence and remanded for resentencing. On remand, the district court imposed large fines and lengthy prison terms followed by a five-year special parole term, pursuant to 21 U.S.C. § 841(b)(1)(A).

Before 1984, certain sentences imposed under the applicable sentencing provision in this case, 21 U.S.C. § 841(b), were required to include a special parole term. *See* 21 U.S.C. § 841(b) (1982). On October 12, 1984, Congress enacted the Comprehensive Crime Control Act, Pub.L. No. 98–473, 98 Stat. 1837, 1976 (1984) ("the Act"), which amended existing federal drug law.[2] Among these amendments, the Act created three levels of offenses based upon the weight of the drugs in question. Specifically, Congress amended § 841(b) by:

(1) eliminating special parole for offenses committed after the effective date of the Act (originally November 1, 1986, and later changed to November 1, 1987);

(2) redesignating old §§ 841(b)(1)(A) and (B) as new §§ 841(b)(1)(B) and (C), respectively; and

(3) creating a new class of sentences under "new" § 841(b)(1)(A), which provided for higher sentences for greater weights of drugs.

98 Stat. at 2030, 2068. *See also United States v. De Los Reyes*, 842 F.2d 755, 757 (5th Cir.1988). Apparently through oversight, new § 841(b)(1)(A) did not mention a special parole term. Acknowledging that oversight, neither party here contends that special parole or supervised release can be imposed for crimes committed between Oc-

tober 12, 1984 and October 27, 1986, the date of the ADAA's enactment. *See United States v. Phungphiphadhana*, 640 F.Supp. 88 (D.Nev.1986); *United States v. Mowery*, 703 F.Supp. 940 (M.D.Ga.1989). Appellant maintains, however, that special parole cannot be imposed on any § 841(b)(1)(A) offense committed between October 12, 1984, and November 1, 1987, the effective date of the Sentencing Reform Act.

In § 1002 of the ADAA, Pub.L. No. 99–570, 100 Stat. 3207–2 to 3207–4 (1986), Congress again amended § 841(b) by:

(1) striking the existing §§ 841(b)(1)(A) and (B);

(2) reattaching and redesignating § 841(b)(1)(C) as § 841(b)(1)(D);

(3) adding three new subsections: new §§ 841(b)(1)(A), (B), and (C);

(4) attaching mandatory "supervised release" to new §§ 841(b)(1)(A), (B), and (C).

The amendments thus prescribed four offense levels instead of three, based upon the weight of the drugs. These enhanced prison terms and fines and the attendant terms of "supervised release" were made applicable to the first three parts of § 841(b), including § 841(b)(1)(A), the section under which appellant was sentenced. Section 1002 did not carry an express provision for its effective date.

In contrast, section 1004 of the ADAA, Pub.L. No. 99–570, 100 Stat. 3207, 3207–6 (1986), which deleted all remaining references to special parole terms and substituted for them the term "supervised release," specifically provided that it was to take effect at the same time as 18 U.S.C. § 3583, which was part of the Sentencing Reform Act, 18 U.S.C. § 3551 *et seq.* (Supp. IV 1986). Because of a legislative postponement, that Act, originally scheduled to go into effect on November 1, 1986, did not

---

1. The appellant's only other claim—that the district court's imposition of a special assessment of $50.00 on each count was invalid because 18 U.S.C. § 3013 was enacted in contravention of the origination clause, U.S. Const. art. I, § 7, cl. 1—has been foreclosed by our opinion in *United States v. Simpson*, 885 F.2d 36 (3d Cir.1989).

2. The Sentencing Reform Act was one chapter of the Comprehensive Crime Control Act. *See* 98 Stat. 1976, 1987.

go into effect until November 1, 1987. *See* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985).

### B.

We find that under § 1002 of the ADAA, appellant is subject to a mandatory minimum five-year term of supervised release in addition to his term of imprisonment. That is the result reached on essentially identical facts in *United States v. Torres,* 880 F.2d 113 (9th Cir.1989), which held that the regime of supervised release under § 841(b)(1)(A) came into being on October 27, 1986, the date of enactment of the ADAA. A number of other cases hold that § 1002 did not go into effect (and supervised release for drug cases did not come into being) until November 1, 1987. *See United States v. Whitehead,* 849 F.2d 849, 860 (4th Cir.1988); *United States v. Smith,* 840 F.2d 886, 889 (11th Cir.1988); *United States v. Byrd,* 837 F.2d 179, 181 (5th Cir. 1988). These cases are arguably explained by the fact that they all involved lower volume drug offense provisions, for which special parole was not abolished until November 1, 1987. *See* § 1004(b) of the ADAA, 100 Stat. at 3207–6. In each of these cases, the courts vacated terms of supervised release and directed that the district court impose terms of special parole instead, thus treating supervised release and special parole as somewhat interchangeable concepts. That course of action cannot be followed here because no special parole term is available for violations of § 841(b)(1)(A) occurring after October 12, 1984.

We do not dispute that special parole and supervised release are closely related mechanisms for post-release supervision of federal offenders.[3] However, the substitution of supervised release for special parole of federal offenders was not accidental:

> The legislative history of the [Sentencing Reform Act of 1984] shows that Congress was dissatisfied with the "old" law

which conditioned the length of time a defendant was supervised on parole solely on the length of the original term; the smaller percentage of the term a prisoner served in prison, the longer the period of parole supervision. Congress decided to replace this system with one that would make both the existence and the length of post-incarceration supervision dependent on the judge's decision as to whether community supervision was needed in an individual case. The Senate Report in the section-by-section analysis explained this approach:

> Unlike current law, however, probation officers will only be supervising those releasees from prison who actually need supervision, and every releasee who does need supervision will receive it.

Slawsky, Looking at the Law, 53 Federal Probation 69, 70 (June 1989) (quoting S.Rep. No. 225, 98th Cong., 2d Sess 125, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3308). Thus, Congress had more than formal reasons for supplanting (special) parole with supervised release, and to the extent that the *Whitehead, Smith,* and *Byrd* courts found the two mechanisms to be substantively the same, we disagree with their holdings.

We hold that supervised release became effective on October 27, 1986. We acknowledge that supervised release was conceptually linked to the regime of the Sentencing Reform Act, which did not become effective until November 1, 1987, but we do not believe that supervised release terms are inseparable from the Sentencing Reform Act's regime. Two basic principles of statutory construction compel our holding. First, absent indication to the contrary, a statute takes effect on the date of its enactment. *See Air–Shields, Inc. v. Fullam,* 891 F.2d 63, 65 (3d Cir.1989); 2 Sutherland's Statutory Construction § 33.06 (4th ed. 1986). Second, courts must impute a reasonable purpose to Congress, and it is unreasonable to think that Congress want-

---

**3.** The bill originated in the Reagan Administration, not the Congress. As sent by the President to the Congress, *see* "The Drug Free America Act of 1986: A Proposal to Congress From the Presi-

dent of the United States," the bill spoke of special parole. *See Proposal* § 502(1)(A)(VIII). It was Congress that invented "supervised release."

ed to maintain special parole for all offenses committed up until November 1, 1987. A number of considerations support this view, as reasoned by Ms. Slawsky, Assistant General Counsel of the Administrative Office of the United States Courts:

> [G]iven the relatively long periods of incarceration required by these sections, by the time most of these defendants returned to the community, the supervised release provisions of the Sentencing Reform Act would be in effect, and ... by the time some of the defendants served their long mandatory minimum terms of imprisonment, the Parole Commission would no longer be in operation to supervise special parole terms.

Slawsky, *supra,* at 86. Thus, supervised release will de facto replace special parole for offenses committed after November 1, 1987. Furthermore, supervised release will be administered by the federal probation service whereas special parole is administered by the United States Parole Commission, which will expire by operation of law in 1992. *See* section 235 of the Sentencing Reform Act, 98 Stat. at 2031–32, (stating that chapter 311 of Title 18 of the United States Code, 18 U.S.C. § 4201 *et seq.*, remains in effect until five years after the effective date of the Act). Although a successor agency will doubtless be created, its anatomy and powers are unknown.

Additionally, to the extent that Congress did inadvertently leave special parole out of

the 1984 Act and intended to correct its error with respect to high volume drug offenses in the ADAA, it is not reasonable to believe that Congress intended to correct a previous error by making the correction effective two years hence. Thus, we hold that supervised release came into effect with the enactment of the ADAA, on October 27, 1986.[4]

We recognize that this holding perpetuates a circuit split. We join the Ninth Circuit in holding that supervised release became effective when the ADAA became effective. Although the Fourth, Fifth and Eleventh Circuits were not faced with situations where the defendant would be unsupervised (the defendants in those cases were charged with distributing smaller quantities of drugs so that special parole applied, *see supra* at 1404), the district courts in those circuits are bound by the *Whitehead, Smith,* and *Byrd* decisions "across the board." At first reading this point may seem technical, but its practical consequences are enormous because responsibility for supervising post-release offenders will be divided, for no logical reason, between the probation service, for people sentenced to supervised release, and the U.S. Parole Commission or its successor, for people sentenced to special parole.[5] The problem is compounded by the fact that supervision by the judiciary is frequently transferred from one district to

---

**4.** We do not find the explicit invocation of the later effective date (November 1, 1987) for "the amendments made by this section" in § 1004(b) of the ADAA, 100 Stat. at 3207–6, to be inconsistent with our holding. The "section" referred to in § 1004 means only § 1004 itself, not the entire ADAA, and the amendments referred to, contained in § 1004(a), strike out the term "special parole" and insert the term "supervised release." These amendments were necessary because, although § 1002 of the ADAA inserted supervised release for some offenses which had previously been special parole offenses (21 U.S.C. § 841(b)(1)(A), (B) & (C)), it did not insert supervised release for all special parole offenses. For instance, special parole was retained for 21 U.S.C. §§ 841(b)(1)(D), 845, 845a, 845b, and 960(b)(4). Thus, § 1004(b) was necessary to effectuate the change from special parole to supervised release for all those offenses for which the ADAA had not already implemented supervised release.

We also note in this regard that the government's argument that special parole, not supervised release, is the appropriate post-release supervision mechanism to fill the void created by the legislative confusion, is undermined by the fact that Congress, in passing the ADAA, perpetuated special parole for some offenses, but not for others. It appears that Congress knew which offenses it wanted special parole to apply to in the interim period, and 21 U.S.C. § 841(b)(1)(A) was not one of them.

**5.** We note that a special parole term may require more community supervision because, upon revocation of a special parole, an individual may be re-paroled. By comparison, after revocation of a supervised release term, there is no provision for additional post-release supervision.

another, *see* 18 U.S.C. § 3605, and the transferee district may be in a different circuit with a different rule as to whether special parole or supervised release is the proper sentence. The anatomy of the problem that may arise in the event that such a sentence is challenged in a proceeding under 28 U.S.C. § 2241 is described in the margin.[6] For these reasons the Supreme Court might wish to consider resolving the circuit conflict.

The judgment of sentence will be vacated and the case remanded with directions to impose a term of supervised release in lieu of a term of special parole. In all other respects, the judgment of sentence will be affirmed.

David Bedell, Elgin, Fla., pro se.

Paul J. Brysh, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

---

**6.** Assume a transferor district on a regime of supervised release and a transferee district on a regime of special parole. While many courts may find that the sentence as imposed is the sentence that controls, this situation will at the very least lead to increased litigation. In this situation, if the Court attempts to revoke supervised release, the defendant can claim that the Parole Commission has jurisdiction and that the Commission's reparole guidelines should apply. A defendant in such a situation could also claim

that he is entitled to early termination of parole pursuant to 18 U.S.C. § 4211(c), a provision that has no parallel for supervised release. Such scenarios serve to underscore that, given the clear split in the circuits, similarly situated releasees will often be treated differently.