**In re the Application of Charles Ray WILSON for Payment of Services.**

No. CO–93–1262.

Court of Appeals of Minnesota.

Dec. 14, 1993.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for appellant Charles Wilson.

Hubert H. Humphrey, III, Atty. Gen., James P. Spencer, Asst. Atty. Gen., St. Paul, for respondent Chief Judge Kenneth Fitzpatrick.

Tom Foley, Ramsey County Atty., Harry D. McPeak, Asst. County Atty., St. Paul, for Ramsey County.

Considered and decided by AMUNDSON, P.J., and NORTON and KALITOWSKI, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Charles Wilson, who had been indicted on four counts of first degree murder, applied to the district court for payment of investigative and expert witness services. Following two orders granting payment in lesser amounts, the chief judge of the district court denied part of Wilson's request. We affirm in part, reverse in part, and remand.

## FACTS

Wilson is charged with a double homicide which occurred at a flower shop on Rice Street in December 1992. Wilson confessed to having committed the offenses. He has given notice of a defense of not guilty by reason of mental illness. The court has ordered several examinations of Wilson by psychologists and neuropsychologists, including an examination of whether Wilson is competent to stand trial.

Wilson filed two ex parte motions for payment of investigative and expert witness services. These motions were granted, in amounts not to exceed $1,000, by separate district court judges. In March 1993, Wilson filed an ex parte motion requesting expert witness and investigative service fees of $10,-000. This motion was submitted to the chief judge of the district court.

The chief judge convened a meeting of the district court administrator, the district court administrative services director and the chief district public defender. Those present reached an agreement on the funding of future services, but later disagreed on the nature of that agreement. The meeting was not recorded.

The chief judge issued an order granting part of Wilson's request. Defense counsel, however, was confused by this order and sought clarification. The chief judge then scheduled an ex parte hearing to discuss the defense request.

At the hearing, James Hankes, the chief district public defender, explained that he had a fund for investigative services, in the amount of $15,000, in his budget for the current fiscal year. However, this entire fund had been spent and overspent, with outstanding bills to pay. Hankes also stated that his total annual budget was spent, or nearly spent. Hankes admitted he had spent money in the investigative services budget for computer and rent payments in the previous fiscal year, but stated he had not done so in the current year. He stated that in the current fiscal year, he had not reallocated investigative services funds for any other uses.

Hankes said he had instructed his staff to request funds under Minn.Stat. § 611.21 only in homicide cases or where the defendant was mentally ill. Hankes indicated he had been told to use his own funds first, before requesting money under section 611.21. He said he had applied for some "contingency" funds from the State Board of Public Defense, but had been turned down.

The chief judge, by written order, granted Wilson the $3,000 that he had already been authorized, but denied the remainder of the defense request on the grounds that Minn. Stat. § 611.27, subds. 4 and 7 had relieved the counties of this obligation, and assigned it to the State Board of Public Defense.

## ISSUE

Is the district public defender entitled to additional funds from the county budget under Minn.Stat. § 611.21 for Wilson's defense?

## ANALYSIS

 The determination of expert witness fees is a matter within the district court's discretion. *State v. Volker*, 477 N.W.2d 909, 910 (Minn.App.1991). The chief judge's order, however, relies on statutory interpretation, a matter on which this court need not defer to the district court. *See State v. Moore*, 431 N.W.2d 565, 567 (Minn. App.1988).

Defense counsel may request funds for investigative or expert services on behalf of a defendant who is "financially unable" to obtain them. Minn.Stat. § 611.21(a) (1992). The defense may make such a request whether or not counsel was appointed by the court. *Id.* If the court determines that the services are "necessary to an adequate defense" and the compensation reasonable, it shall "direct payment by the county in which the prosecution originated." *Id.* A district court judge, however, may not approve a payment exceeding $1,000 to a single provider. Minn.Stat. § 611.21(b). The chief judge of the judicial district must approve payments of more than $1,000 to a single provider after the district court judge certifies that payment in excess of $1,000 is necessary to provide fair compensation for services of an unusual character or duration. *Id.*

Wilson's last request under the statute was made in an ex parte application to the chief judge of the district. The chief judge concluded that the county, which funds the district court, no longer has any responsibility to pay for investigative and expert services for indigent defendants represented by the public defender.

 Minn.Stat. § 611.27, subd. 1(a) (1992) provides that the "total compensation and expenses" of the district public defender are to be paid by the county or counties comprising the judicial district. The state, however, has taken over this obligation for the current biennium, as it did from 1991 to 1993. *See* Minn.Stat. § 611.27, subd. 4 (1992). Ramsey County argues, and the chief judge concluded, that this state takeover of funding has relieved the counties of any obligation to fund public defender requests under Minn. Stat. § 611.21. We conclude that section 611.27 has not superseded or impliedly repealed section 611.21. *See State v. Jonason*, 292 N.W.2d 730, 734 (Minn.1980) (implied repealer by later enactment will be inferred only when two enactments are irreconcilable).

There are two provisions in section 611.27 at issue here: the state takeover of public defender funding, Minn.Stat. § 611.27, subd. 4; and the provision for funding "where adequate representation cannot be provided by the district public defender." Minn.Stat. § 611.27, subd. 7 (1992).

The legislature established the public defender financing system in the same act in which it allowed indigent defendants to request investigative and expert services from the court. 1965 Minn.Laws ch. 869, §§ 8, 14. The county bore financial responsibility under both provisions. *Id.* When the legislature, beginning in 1990, placed the responsibility for financing the district public defenders on the state, it chose not to repeal or amend section 611.21. Indeed, the legislature in 1989 strengthened that statute by increasing the amount of funds that could be ordered, and by giving the defendant a right to appeal. 1989 Minn.Laws ch. 335, art. 1, § 261.

In reconciling Minn.Stat. §§ 611.21 and 611.27, subd. 4, we must remember that the issue extends beyond budget allocation to a constitutional right of the defendant. *See Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985) (government has a constitutional obligation to provide indigent defendants the "raw materials" needed for an effective defense). The Supreme Court has left to the states to decide how to implement that right. *Id.* at 83, 105 S.Ct. at 1096. The Court has not said, however, that the state may require an indigent defendant to go without necessary defense services simply because the state has funded a public defender system, even though that system cannot provide that defendant the necessary services.

■ Wilson argues that the district court, in considering a request for services under section 611.21, may not consider in any way the public defender budget. We disagree. Generally, a state is free to determine how it will vindicate a constitutional right. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (to vindicate prisoners' rights of access to courts, state must provide either adequate prison law libraries or adequate assistance from persons trained in the law). The state can satisfy the requirements of *Ake* either by funding investigative and expert services through the public defender budgets or by funding them through petitions to the court. If the district public defender's budget actually includes funds reserved for investigative or expert services, the district court, in considering a request under section 611.21, may look to whether any of those funds remain available to the defendant.

■ The district public defender stated that his budget for investigative and expert services was totally depleted. There is no evidence to the contrary. Thus, the primary issue here is not whether the district court can consider the public defender budget in ruling on a section 611.21 request, but whether such a request can be denied when there are no funds available in the district public defender budget. We believe in such circumstances a defendant cannot constitutionally be left out in the cold, or consigned to a speculative search through the state public defender system for funding which may not be found.

A defendant's right to adequate resources under *Ake* is a personal right, not a right accruing to the public defender system generally. The government is obligated to vindicate that right by means of public defender financing if available, but, in any event, by some means. The legislature has provided this funding mechanism in Minn.Stat. § 611.-21. We decline to hold that, simply by having the state take over the county funding of public defenders, the legislature intended to repeal this funding mechanism, so essential as a last resort.

Respondents' second argument is also without merit. Minn.Stat. § 611.27, subd. 11 (1992) allows the court to appoint other counsel when the public defender is unable to provide "adequate legal representation, including associated services." As Wilson points out, the district court has not appointed other counsel in this case, nor has the public defender asked to be relieved from representing Wilson. Thus, the provision for financial responsibility in such circumstances does not apply.

A defendant has a constitutional right to adequate investigative and expert services. *See Ake,* 470 U.S. at 77, 105 S.Ct. at 1093. Minn.Stat. § 611.21 provides a "safety valve" of court-ordered funding for these services when public defender budgets are depleted. The chief judge's order in effect requires public defenders not only to show that their investigative and expert services budget is depleted, but also to justify all their budget allocation decisions. Inevitably, such scrutiny would deny some defendants their right under *Ake.* The chief public defender stated that he had no funds remaining in his budget to pay for these services, and had been unable to tap other sources. Therefore, Wilson's only recourse to vindicate his right to the services under *Ake* is through Minn.Stat. § 611.21.

We acknowledge the anomaly of requiring the counties to pay for these services when the state has assumed all other public defender expenses. This problem, however, is for the legislature to address. Pending any legislative resolution, we believe that the district courts are obligated by the plain language of Minn.Stat. § 611.21 to impose these costs upon the counties. In ruling on such requests, the courts must act as independent magistrates, without undue influence being exerted by county or district officials with budgeting responsibilities.

There is no dispute that Wilson is in need of some mental health experts to assist in his defense. Wilson points out that the chief judge has found only $6,000 of the $10,000 he requested to be reasonable. We remand for findings on the reasonableness and necessity of the remainder of the request.

## DECISION

That portion of the order granting part of the defense request is affirmed. The district court erred in finding Wilson was not entitled to that part of the remainder of his request which is reasonable and necessary.

**Affirmed in part, reversed in part, and remanded.**