**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William STILLWELL, Sr.,**
**Defendant–Appellant.**

**No. 86–2699.**

United States Court of Appeals,
Seventh Circuit.

Argued April 26, 1988.

Decided Aug. 18, 1988.

Kenneth N. Flaxman, Chicago, Ill., for defendant-appellant.

Kristina M.L. Anderson, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

A jury convicted William Stillwell, Sr., (Stillwell) of three counts of receiving, possessing, concealing, storing, or disposing of stolen goods from interstate commerce in violation of 18 U.S.C. § 2315 and one count of conspiracy in violation of 18 U.S.C. § 371. On August 8, 1986, the district court entered judgment against Stillwell and he was subsequently sentenced to a six-year term.[1] After Stillwell filed his notice of appeal, Congress amended the language of the "interstate commerce" element of 18 U.S.C. § 2315, and Stillwell relies upon the amended provision to challenge three of the four counts of his conviction. Stillwell's arguments can also be understood as a challenge to the sufficiency of the evidence produced to meet the jurisdictional requirement of the statute. For the reasons outlined below, the defendant's conviction is affirmed.

1. The defendant was sentenced to five years for the conspiracy charge in count 1 and a consecutive term of one year for count 2. Probation was imposed on the remaining two counts, with $20,000 restitution and alcoholic counseling also imposed.

## I. FACTUAL BACKGROUND

Stillwell and his two sons, William, Jr., ("Billy") and Charles, were named in a five-count indictment handed up by a grand jury on October 22, 1985. Both sons pled guilty to conspiracy and to one count under Section 2315. They subsequently testified at their father's trial. In reference to count 2 of the indictment under 18 U.S.C. § 2315, the sons testified that sometime in early October of 1984, they stole a trailer load of steel shelving valued at approximately $15,000 from the parking lot of the Conrail freight yard in Chicago, Illinois. Although the load had originated from another plant in Chicago, it was awaiting shipment to Edison, New Jersey. The sons took the trailer of shelving to their father's trucking yard in Markem, Illinois where the senior Stillwell inspected it and directed Billy to organize the shelving and store it at their other truck yard in Blue Island, Illinois. Thereafter, Stillwell sought and found a buyer for a portion of the shelving. FBI agents testified at trial that they recovered the remaining shelving from the Stillwells' Blue Island yard.

With respect to count 3 under the same statute, the sons testified that sometime later in October of 1984, they informed their father that a Polley Freight Lines refrigerated trailer was parked nearby and that the refrigerator unit was running. The latter fact lead the Stillwells to believe that the trailer might be loaded with meat. The senior Stillwell directed his sons to steal the trailer and take it to their Blue Island yard and hide it. When he arrived at the yard to inspect the contents of the trailer, Stillwell found a bill of lading noting that the truck contained hams. Nevertheless, it was actually filled with Jell–O Pudding Pops, according to Billy's testimony, "[a]s far as you could see." The Pops, which were worth approximately $21,000, had been en route from Lafayette, Indiana to Bettendorf, Iowa before being stolen. Stillwell took a couple of cases of the Pops

off the trailer and stated that he would attempt to find a buyer for the rest. Billy further testified that he later removed the Pulley Freight Lines signs from the trailer so that it could not be recognized in their garage. Although Stillwell was unsuccessful in his effort to sell the Pops, he did sell some of the tires off the stolen trailer.

In reference to count 4, again under 18 U.S.C. § 2315, Charles testified that in December of 1984, he had been hired to drive a return load of coiled steel from Louisville, Kentucky to someplace in Decatur, Alabama. Charles allegedly ran into some problems obtaining money from the shipper for fuel. When Charles called home to his father, Stillwell directed him to bring the load to their Blue Island yard where it was hidden. Stillwell was unsuccessful in his subsequent efforts to sell the steel, which was eventually recovered from the yard by FBI agents.

At the close of trial, the jury was instructed about the necessary elements under Section 2315. As part of those instructions, the judge gave the following definition of the interstate commerce element of the statute:

> The term interstate commerce merely refers to the movement of property from one state into another state and it's enough for this purpose if the property either has recently been moved interstate or if it has begun the process of moving interstate as a result of a transaction or a series of related transactions that hadn't been fully completed or consummated at the time of the defendant's acts as alleged in the indictment.

After Stillwell agreed to the use of the foregoing instruction, the case was given to the jury which returned a guilty verdict as to all counts. Stillwell's subsequent motions to arrest the judgment and for a new trial were denied on September 26, 1986. He then filed his notice of appeal on October 10, 1986.[2]

2. Stillwell filed his appeal four days late, a delay which mushroomed into a problem of some magnitude. This Court directed Ronald G. Draper, Stillwell's trial counsel and appointed appellate counsel, to file a jurisdictional memo-

randum. Draper ignored both that order and our following order asking for an explanation. The Court then sanctioned Draper $500 under Fed.R.App.P. 46(c) for ignoring its orders. *United ed States v. Stillwell*, 810 F.2d 135 (7th Cir.

## II. ANALYSIS

At the time of Stillwell's conviction, sentencing and the filing of his notice of appeal, 18 U.S.C. § 2315 provided, in pertinent part:

> Whoever receives, conceals, stores, barters, sells or disposes of any goods, wares, or merchandise, securities, or money of the value of $5000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, *moving as, or which are a part of, or which constitute interstate or foreign commerce,* knowing the same to have been stolen, unlawfully converted, or taken ... Shall be fined not more than $10,-000 or imprisoned not more than 10 years, or both. (Emphasis added.)

On November 10, 1986, the 99th Congress amended the "interstate or foreign commerce" language of Section 2315 to reach stolen goods "which have crossed a State or United States boundary after being stolen." 18 U.S.C. § 2315 (1986). Before this Court, Stillwell relies on the amended interstate commerce provision to challenge his conviction on counts 2 and 3, claiming that the government failed to prove that the steel shelving or Jell-O Pudding Pops had "crossed a State or United States boundary after being stolen, unlawfully converted, or taken ..."[3] Finally, Stillwell contends that if counts 2 and 3 are reversed, the conspiracy count must also be reversed. The conviction under count 4 is not challenged.

Of necessity, Stillwell must rely upon two unstated principles to support his contention that the amended wording of Section 2315 affects his conviction. The first of these is that absent an express provision providing the effective date of an amending statute, we will interpret the statute to be in effect as of the date of its enactment. *United States v. Shaffer,* 789 F.2d 682, 686 (9th Cir.1986); *United States v. Gavrilovic,* 551 F.2d 1099, 1103 (8th Cir.1977) (citing *Arnold v. United States,* 13 U.S. (9 Cranch) 104, 119, 3 L.Ed. 671 (1815)). The second principle is that when an appellate court is deciding a matter on direct review, it must normally apply the law in effect at that time, whether it be intervening statutory or decisional law, "rather than the law as it existed at the time the lower court acted." *United States v. Fitzgerald,* 545 F.2d 578, 581 (7th Cir.1976) (citing *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 108, 2 L.Ed. 49 (1801)). *See also Thorpe v. Durham Housing Authority,* 393 U.S. 268, 281–83, 89 S.Ct. 518, 525–27, 21 L.Ed.2d 474 (1969).

■ In addition to the foregoing two principles, we must also add a third which neither of the parties reckoned with: the provisions of the general federal saving statute, 1 U.S.C. § 109, which preserve Stillwell's conviction and sentence under Section 2315. The general saving statute provides that:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall expressly so provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

1 U.S.C. § 109. The purpose of the current general saving statute, like that of its precursor, is "to abolish the common law pre-

---

1987). Draper was also suspended from practice before us. Prior to his suspension, however, Draper provided the Court with a copy of an order by Judge Shadur citing excusable neglect as the basis for granting an extension of time in which to file the notice of appeal. Stillwell's subsequent appointed counsel then perfected the appeal.

**3.** Section 2315 was amended by the Comprehensive Criminal Law And Procedure Technical Amendments Act of 1986, P.L. 99–646, § 76.

Stillwell specifically contends that the purpose of the amended wording of Section 2315 was to reverse the Supreme Court's liberal interpretation of the term "interstate commerce" as employed in 18 U.S.C. § 2314, a companion statute of Section 2315. *McElroy v. United States,* 455 U.S. 642, 102 S.Ct. 1332, 71 L.Ed.2d 522 (1982). Because of our conclusion that Stillwell's conviction is preserved under the general federal saving statute, it is unnecessary for us to address this contention.

sumption that the repeal of a criminal statute resulted in the abatement of 'all prosecutions which had not reached final disposition in the highest court authorized to review them.'" *Warden v. Marrero*, 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed. 2d 383 (1974) (quoting *Bradley v. United States*, 410 U.S. 605, 607, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973)). The saving statute has been repeatedly held to apply to amendments to criminal statutes as well as repeals, *United States v. Breier*, 813 F.2d 212, 215 (9th Cir.1987), and this Court has recently held that the provision is applicable where Congress merely alters the elements of a particular offense. *United States v. Jackson*, 835 F.2d 1195, 1197 (7th Cir.1987). Because Congress did not expressly provide that the amended language of 18 U.S.C. § 2315 should be applied to pending prosecutions, *United States v. Orellanes*, 809 F.2d 1526, 1529 (11th Cir.1987), the saving statute is applicable to Stillwell's conviction and sentence if there is nothing improper about them.[4] We therefore turn to Stillwell's sufficiency of the evidence claim, the only trial error he has raised, and address the claim under the case law interpreting Section 2315 prior to its amendment.

■ It is well settled that the determination of whether stolen goods are in interstate commerce for purpose of Section 2315 is a question of fact for the jury to decide. *United States v. Gardner*, 516 F.2d 334, 344 (7th Cir.), certiorari denied, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975); *United States v. Livingston*, 816 F.2d 184, 192 (5th Cir.1987). It follows that Stillwell bears a heavy burden in bringing his sufficiency of the evidence claim. *United States v. Whaley*, 830 F.2d 1469, 1473 (7th Cir.1987); *United States v. Shoffner*, 826 F.2d 619, 632 (7th Cir.1987) (conviction under 28 U.S.C. § 2312 for transporting stolen vehicles in interstate commerce). Our role is limited to determining whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Whaley*, 830 F.2d at 1472 (quoting *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979)). The appellate court may overturn the verdict "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Whaley*, 830 F.2d at 1473.

In interpreting Section 2315 and similar statutes, the Sixth and Eighth Circuits have stressed that the test for determining the interstate nexus of stolen goods is a practical one which rejects the actual physical location of the goods in lieu of an "overall indicia of interstate commerce." *United States v. Ranzoni*, 732 F.2d 555, 558 (6th Cir.1984); *United States v. Henneberry*, 719 F.2d 941, 946 (8th Cir.1983) (interpreting identical language in 18 U.S. C. § 659); *United States v. Singer*, 660 F.2d 1295, 1307–08 (8th Cir.1981), certiorari denied, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). *See also United States v. Radtke*, 799 F.2d 298, 306 (7th Cir.1986) (question of whether goods were in the stream of interstate commerce for the purposes of 18 U.S.C. § 2313 is based on *common sense* and administered on an *ad hoc* basis). This approach measures such factors as the intent of the consignor, whether the goods were being conveyed by an interstate carrier when stolen, the out-of-state or in-state destination of the goods at the time of the theft, and the subsequent concealment, attempted barter or actual sale of the goods. *Ranzoni*, 732 F.2d at 558. Finally, these courts have also considered the preservation of the aims of the statute in light of congressional intent in enacting it. *Singer*, 660 F.2d at 1308 n. 22. None of these factors alone is dispositive of the issue. *Henneberry*, 719 F.2d at 946.

The "indicia of interstate commerce" test is a reasonable approach to a rather vexing

---

4. The exception to the application of the saving statute adopted in *Hamm v. Rock Hill,* 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964) has no bearing on this case. In *Hamm,* the Supreme Court held that Congress' substitution of a right to enjoy public accommodations under the Civil Rights Act of 1964 for the crime of trespass was not a mere technical abatement and was thus outside of the scope of the saving statute.

problem and is consistent with the Supreme Court's interpretation of the interstate commerce element of Section 2314.[5] *McElroy v. United States,* 455 U.S. 642, 102 S.Ct. 1332. The petitioner in *McElroy* challenged his conviction for transporting forged securities in violation of Section 2314 on the ground that there was no proof that the securities had been forged before crossing state lines. The Court traced the statutory origins of Section 2314 to the Dyer Act of 1919 and held that based on the congressional purpose of that act,

> the trial judge in the present case had correctly instructed the jury that they could find the petitioner guilty of violating § 2314 if they found the forgeries occurred during the course of interstate commerce, which includes a 'continuation of a movement that began out of state,' even though movement of the forged checks was restricted to one state.

*Id.* at 659, 102 S.Ct. at 1341. Moreover, the "indicia of interstate commerce" test squares with this Circuit's reading of the reach of Section 2315.[6] *United States v. Tomasian,* 784 F.2d 782, 786 (7th Cir.1986); *United States v. Gardner,* 516 F.2d 334, 349 (7th Cir.1975) (interpreting the $5000 jurisdictional requirement of Section 2315 liberally to advance the purposes behind the statute). We thus turn to the evidence produced at trial to determine whether it was sufficient to allow a jury to find an interstate nexus of the goods according to the "indicia of interstate commerce" test.

With regard to the steel shelving of count 2, the jury was presented with numerous stipulated business documents, including a freight bill and bill of lading, which showed that the trailer of shelving stolen from the Conrail freight yard in Chicago had been delivered there by Doral Cartage Co., of Chicago on October 4, 1984, and was awaiting shipment by rail to Edison, New Jersey. A representative of Conrail testified that its business is to transport freight throughout fifteen states and two provinces in Canada. With regard to Stillwell's actions after the theft, Billy testified that the senior Stillwell surveyed the contents of the stolen trailer and stated that he would attempt to find a buyer for it. He directed Billy to take the trailer of shelving to their Blue Island yard and put its contents in order. Stillwell then contacted John Pernal and negotiated the sale of some of the shelving. The rest was stored in Stillwell's locked garage where it was recovered by FBI agents. Finally, some of the tires were removed from the stolen trailer before Charles abandoned the trailer.

Similarly, the jury was presented with both documents and testimony about the nature of the Jell-O Pudding Pops shipment in count 3. The bill of lading revealed that the Pops were *en route* from Indiana to Iowa when they were stolen. The Pops were being transported by Polley Freight Lines, an interstate shipper which serves the midwestern United States. Billy testified that his father gave approval of and instructions for stealing the trailer after being told of its whereabouts. Once the trailer was brought to the Blue Island yard, Stillwell inspected it in the hope of finding meat. Finding only the Pops, he attempted to sell them, but was only suc-

---

**5.** 18 U.S.C. § 2314 provides in pertinent part: Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited ... Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**6.** *United States v. Bruun,* 809 F.2d 397 (7th Cir. 1987), is not to the contrary. Appellant cites *Bruun* for the proposition that the Supreme Court's liberal interpretation of the interstate commerce provision in Section 2314 should not be applied to Section 2315. In *Bruun,* this Court reversed appellant's conviction under Section 2314 because while the evidence adduced at trial was sufficient to show that appellant knowingly received stolen securities in violation of Section 2315, he was not indicted under Section 2315 and the evidence was insufficient as to his actual transportation of the securities stolen. The Court stressed that to uphold appellant's conviction would obliterate the distinction between Section 2314 and Section 2315, a distinction obviously intended by Congress. The holding in *Bruun,* however, does not support Stillwell's argument that the Court's interpretation of the interstate commerce nexus of Section 2314 is inapplicable to Section 2315.

cessful at selling some of the tires off the trailer. The stolen trailer was stored inside Stillwell's garage during the week or two that he sought to sell the Pops. Billy also testified that he took the Pulley Freight Lines signs off the side of the trailer so that it could not be recognized. The above evidence falls squarely within the relevant matters outlined in the "indicia of interstate commerce" test and is more than sufficient to sustain the jury's verdict as to both counts 2 and 3. In light of our holding, we need not discuss Stillwell's like argument on conspiracy count 2.

In conclusion, Stillwell's conviction and sentence for conspiracy under Section 371 and Section 2315 prior to the amendment to the latter statute was preserved by the general saving statute since Congress did not expressly provide that the change in Section 2315 was to apply to pending cases and Stillwell's conviction was clearly proper under the law as it then existed. Accordingly, the decision of the district court is AFFIRMED.