**UNITED STATES of America**

v.

**David R. BRUNDAGE, Appellant.**

No. 89–3068.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 13, 1990.

Decided May 18, 1990.

Bradley M. Campbell, Washington, D.C. (appointed by this Court), for appellant.

Richard L. Chamovitz, Asst. U.S. Atty., Washington, D.C., for appellee. Jay B. Stephens, U.S. Atty., Washington, D.C., was on the brief for appellee. John R. Fisher, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before BUCKLEY, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

David R. Brundage appeals from an order of the District Court that both granted his motion to vacate his sentence to a four-year term of supervised release and sentenced Brundage to a three-year term of special parole. We conclude that the original sentence to a four-year term of super-vised release was the proper one under applicable law and accordingly vacate the order of the District Court.

BACKGROUND

On May 12, 1987, Brundage was indicted on one count of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a) and 841(b)-(1)(B)(ii)(II) (1982 & Supp. IV 1986). According to the indictment, the crime occurred on or about April 23, 1987. According to testimony offered at the July 20, 1987, suppression hearing, Brundage was in possession of more than three kilograms of cocaine on April 23, 1987. Upon denial of his suppression motion, Brundage entered a conditional plea of guilty to the charge. He was sentenced to a six-year prison term and to a four-year term of supervised release.

In 1989 Brundage filed a motion under Fed.R.Crim.P. 35(a) to correct his sentence. Brundage contended in the District Court that the Court had been without authority to sentence him to a term of supervised release. The District Court agreed and, over the government's assertion that a four-year term was still permissible, ordered that Brundage's sentence be changed from four years of supervised release to three years of special parole. *United States v. Brundage*, 709 F.Supp. 10 (D.D.C. 1989).

On appeal Brundage argues that the District Court correctly vacated his supervised release term when it concluded that the statute authorizing supervised release was not effective on the date that Brundage committed this offense. He challenges the District Court's imposition of a special parole term, though, arguing that the statutory basis for imposing special parole had been repealed before the date that he committed the offense. The government contends that the District Court should not have vacated the supervised release term, arguing that supervised release provisions became effective and replaced special parole provisions on October 27, 1986.[1]

1. Brundage and the government each contend that the other has altered its position on appeal.

## ANALYSIS

### A. *History of Sentencing Provisions*

Brundage puts before this Court for the first time a statutory construction problem addressed by several other circuits—a problem arising from the "legislative stew" that is the history of the drug sentencing provisions. Prior to 1984, 21 U.S.C. § 841(b)(1)(A) (1982) provided the penalties for any conviction for possession of cocaine with intent to distribute.[2] A person convicted of possession with intent to distribute any amount of cocaine was subject to a prison term of not more than fifteen years, a mandatory special parole term of three years if sentenced to imprisonment, and a fine. Controlled Substances Act, Pub.L. No. 91–513, § 401, 84 Stat. 1236, 1260 (1970).

On October 12, 1984, Congress amended 21 U.S.C. § 841(b) and created two offense categories applicable to possession of cocaine with intent to distribute. Controlled Substances Penalties Amendments Act of 1984, Pub.L. No. 98–473, § 502, 98 Stat. 1837, 2068. The penalty provision categories were completely redefined by amount of the drug involved. A person convicted of a violation of 21 U.S.C. § 841(a) (possession with intent to distribute) involving a kilogram or more of cocaine was subject to a prison term of up to twenty years and a fine. 21 U.S.C. § 841(b)(1)(A)(ii) (Supp. II 1984). The text of this sentencing provision for offenses involving one kilogram or more of cocaine did not explicitly provide for special parole. A person convicted of a violation involving less than a kilogram of cocaine was subject to a prison term of up to fifteen years, a special parole term of at least three years, and a fine. 21 U.S.C. § 841(b)(1)(B) (Supp. II 1984). All of these penalty limits were doubled for offenders with prior drug convictions. 21 U.S.C. § 841(b) (Supp. II 1984).[3]

The Anti–Drug Abuse Act of 1986 (the "ADAA"), Pub.L. No. 99–570, § 1002, 100 Stat. 3207, 3207–2 to 3207–4, again redefined the penalty categories. Section 1002 of the ADAA deleted the two former cocaine offense categories and replaced them with three new cocaine offense categories. The new categories do not make any reference to special parole, but instead require terms of supervised release. Under the regime enacted in the ADAA, a defendant convicted of a violation of 21 U.S.C. § 841(a) involving five or more kilograms of cocaine is subject to a term of from ten years to life in prison, at least five years of supervised release, and a fine. 21 U.S.C. § 841(b)(1)(A)(ii) (Supp. IV 1986). A person convicted of a violation involving 500 grams or more is subject to a prison term of five to forty years, a supervised release term of at least four years, and a fine. 21 U.S.C. § 841(b)(1)(B)(ii) (Supp. IV 1986). A person convicted of a violation involving less than 500 grams is subject to a prison term of up to twenty years, a supervised release term of at least three years, and a fine. 21 U.S.C. § 841(b)(1)(C) (Supp. IV 1986). Again the penalty limits are increased for those with prior drug convictions as well as for offenses involving death or serious bodily injury. The general provisions of the ADAA were enacted October 27, 1986, and, absent any other indi-

However, as "[i]t is well established that a sentence which does not comply with the letter of the criminal statute which authorizes it is so erroneous that it may be set aside on appeal," *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648, 91 L.Ed. 818 (1947), we will nonetheless review the sentence for legal error.

**2.** 21 U.S.C. § 845 provided and still provides for increased penalties for anyone convicted of selling drugs to persons under age twenty-one.

**3.** At the same time, section 224 of the Comprehensive Crime Control Act of 1984 deleted the references to special parole in the unamended version of 21 U.S.C. § 841(b). Pub.L. No. 98–473, 98 Stat. 1837, 2030 (also cited as the Sen-

tencing Reform Act of 1984). The effective date on these changes was delayed until November 1, 1986, Pub.L. No. 98–473, § 235, 98 Stat. at 2031, and then until November 1, 1987. Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985). Section 1005 of the Anti–Drug Abuse Act of 1986 ("ADAA"), Pub.L. No. 99–570, 100 Stat. 3207, 3207–6, repealed the portions of section 224 of the Comprehensive Crime Control Act of 1984 which made these changes. Instead, section 1004 of the ADAA deleted all references to special parole and replaced them with "supervised release," effective November 1, 1987.

cations, presumptively became effective on that date. *See 2 Sutherland Statutory Construction* § 33.06 (Sands 4th ed. Rev. 1986); *Air–Shields, Inc. v. Fullam*, 891 F.2d 63, 65 (3d Cir.1989); *United States v. Stillwell*, 854 F.2d 1045, 1047 (7th Cir. 1988).

Section 1004(a) of the ADAA amended the entire Controlled Substances Act, 21 U.S.C. §§ 801–904, by deleting the words "special parole term" and replacing them with "term of supervised release" wherever they occurred. Pub.L. No. 99–570, 100 Stat. at 3207–6. Section 1004(b) stated that the amendments made by "this section" were not to become effective until the effective date of 18 U.S.C. § 3583 (the provision of the Comprehensive Crime Control Act of 1984 containing the standards for the imposition of supervised release). Pub.L. No. 99–570, 100 Stat. at 3207–6. This provision of the Comprehensive Crime Control Act of 1984, 18 U.S.C. § 3583, became effective on November 1, 1987. Thus while the ADAA generally took effect on October 27, 1986, those provisions referenced in section 1004(b) did not take effect until November 1, 1987.

## B. *Treatment by Other Circuits*

We must decide what post-confinement monitoring provision, if any, was applicable to Brundage's crime committed on April 23, 1987. Brundage pleaded guilty to possession with intent to distribute 500 grams or more of cocaine during the "gap period" between October 27, 1986, when the ADAA was enacted, and November 1, 1987, when the Comprehensive Crime Control Act of 1984 (and therefore section 1004(b) of the ADAA) became effective. The courts that have examined this issue have suggested four possible resolutions. The first three assume that the supervised release provisions of the ADAA did not become effective until November 1, 1987. First, some courts have indicated that the whole of ADAA section 1002, changing both the penalty and post-confinement monitoring provisions of 21 U.S.C. § 841(b)(1), may not have become effective until November 1, 1987, in which case Brundage should have been both charged and sentenced under the spe-

cial parole provisions existing prior to the ADAA. Second, one court suggests (as Brundage argues) that if the penalty provisions of ADAA section 1002 became effective when enacted on October 27, 1986, the District Court was without authority to impose any term of post-confinement monitoring because section 1002 did away with those portions of 21 U.S.C. § 841(b)(1) authorizing special parole as a post-confinement monitoring option. Third, some courts have concluded that even if section 1002 was immediately effective, the special parole provisions of the prior law "carried over" during the gap period. This third resolution would necessitate determining what special parole term, if any, was applicable to Brundage's crime under prior law. Finally, two circuits have held that ADAA section 1002 may have become effective in its entirety upon enactment, in which case imposition of the four-year term of supervised release was appropriate.

Courts choosing one of the first three options have held that ADAA section 1004 "Elimination of Special Parole Terms" subsection (b), which provides that, "the amendments made by this section shall take effect on the date of the taking effect of section 3583 of title 18, United States Code," applied to delay the effective date of supervised release terms wherever they were found, including in the provisions of ADAA section 1002, in which supervised release is the only form of post-confinement monitoring authorized. These decisions were based on a belief that Congress intended to enact a comprehensive statutory framework to replace special parole terms with supervised release. *United States v. Posner*, 865 F.2d 654, 660 (5th Cir.1989); *United States v. Molina–Uribe*, 853 F.2d 1193, 1199 (5th Cir.1989); *United States v. Portillo*, 863 F.2d 25, 26 (8th Cir.1988); *United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); *United States v. Smith*, 840 F.2d 886, 889–90 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988); *United States v. Byrd*, 837 F.2d 179, 181 n. 8 (5th Cir.1988). The Ninth and

the Third Circuits, on the other hand, have held that supervised release terms became effective along with all the other provisions of ADAA section 1002 immediately on enactment. *United States v. Gozlon–Peretz,* 894 F.2d 1402 (3d Cir.1990); *United States v. Oleck,* 894 F.2d 1406 (3d Cir.1990); *United States v. Torres,* 880 F.2d 113 (9th Cir. 1989).

The circuits holding supervised release not applicable for the gap period from October 27, 1986 to November 1, 1987 have suggested several approaches to the availability of special parole for crimes committed during this period. *Portillo,* 863 F.2d at 26–27, contemplates the first resolution listed above, by suggesting without deciding that all of the changes enacted in ADAA section 1002 might be subject to the November 1, 1987 effective date of section 1004(b). *See also United States v. Meyers,* 847 F.2d 1408, 1415 (9th Cir.1988) (explicitly rejecting this approach). The position suggested by the Eighth Circuit in *Portillo* has the advantage of looking unambiguously to the prior law for both penalty and special parole terms but requires an unnatural reading of the effective date provisions of ADAA section 1004. The Eighth Circuit later rejected this approach. *United States v. Padilla,* 869 F.2d 372, 381–82 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989).

The other circuits holding supervised release unavailable for gap period offenses, and the later decision of the Eighth Circuit, reason that except for the supervised release language, ADAA section 1002 became effective on October 27, 1986. This creates a further split in the circuits on what provisions for special parole, if any, were effective during this gap period. One possible conclusion, and the one that Brundage urges, is that none were. The language of section 1002 ("[21 U.S.C. § 841(b)(1)] is amended ... by striking out subparagraphs (A) and (B)") repealed the former provisions entirely and thus revoked all authority to impose terms of special parole. Section 1002 contains no lan-

guage of its own authorizing special parole. A panel of the Fifth Circuit has indicated, although it was bound by prior decisions, that this may be the correct resolution of the gap period issue.[4]

[T]he new law eliminated the special parole term requirement for all violations of section 841(a) occurring in the gap period, regardless of the applicability of special parole prior to that date. Section 1004(b), which provided for the delayed effective date of the changeover from special parole to supervised release, might have the implicit effect of preserving the special parole term requirement of pre-October 1986 law, but reading such an effect into that section requires a somewhat expansive construction of a criminal statute and the rule of lenity hence militates against imposing special parole terms for offenses occurring during the October 27, 1986–November 1, 1987 gap period.

*United States v. Robles–Pantoja,* 887 F.2d 1250, 1261 (5th Cir.1989) (citing *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)) (other citations omitted) (footnote omitted). Nevertheless, no court has actually adopted this position.

The circuits that have held the penalty provisions of ADAA section 1002 effective on October 27, 1986, and the supervised release provisions of section 1004 effective on November 1, 1987, have either not addressed the question of the effectiveness of special parole during the gap period, or have adopted the third resolution set out above, holding that it was applicable under the implicit-preservation-of-special-parole or "carryover" reasoning which was criticized in *Robles–Pantoja.* *United States v. Levario,* 877 F.2d 1483, 1487–89 (10th Cir. 1989) (holding that 1984 amendments eliminated special parole for possession of more than one kilogram and consequently imposing no post-confinement monitoring); *Padilla,* 869 F.2d at 381–82 (remanding for imposition of whatever special parole term was applicable to the possession of more

**4.** The court was bound by the decisions in *Posner,* 865 F.2d at 657, 660, and *Molina–Uribe,* 853 F.2d at 1199, both of which imposed special

parole terms for offenses committed during the gap period. *United States v. Robles–Pantoja,* 887 F.2d 1250, 1261 (5th Cir.1989).

than five kilograms prior to the ADAA); *Posner*, 865 F.2d at 660 (remanding for imposition of special parole term for marijuana offense); *Whitehead*, 849 F.2d at 860 (remanding for the imposition of special parole in case involving 500 grams or more); *Smith*, 840 F.2d at 889-90 (remanding for imposition of special parole for an offense of five grams or more).

The carryover reasoning leads to particular complications in Brundage's case. Several courts have indicated that the 1984 amendments to 21 U.S.C. § 841(b), Controlled Substances Penalties Amendments Act of 1984, Pub.L. No. 98-473, § 502, 98 Stat. 1837, 2068, which separated cocaine offenses into two quantitative categories and imposed a longer prison sentence for crimes involving more than one kilogram of cocaine, at the same time eliminated special parole terms for the greater offense, while retaining special parole for offenses involving less than one kilogram. *See Gozlon-Peretz*, 894 F.2d at 1403; *Oleck*, 894 F.2d at 1407; *Torres*, 880 F.2d at 114; *Levario*, 877 F.2d at 1487-89; *United States v. Garcia*, 879 F.2d 803, 804-05 (10th Cir.1989); *United States v. De Los Reyes*, 842 F.2d 755, 757-58 (5th Cir.1988); *United States v. Santamaria*, 788 F.2d 824 (1st Cir.1986). Because Brundage was charged under the provisions of the 1986 amendments that replaced the two-category scheme with a three-category scheme, it is unclear what sentencing provision would apply to Brundage's crime if the special parole terms carried over into the gap period. The offense category to which Brundage pleaded guilty —500 grams or more—is a new category, created in ADAA section 1002. Brundage argues that he was arrested with more than three kilograms and that the provisions of former section 841(b)(1)(A) (Supp. III 1985), applicable to offenses involving more than one kilogram, and omitting special parole provisions, should apply. But there has been no finding as to the total amount of cocaine in his possession and Brundage pleaded guilty only to possession of 500 grams.

Finally, the Ninth and the Third Circuits have followed the fourth resolution set out above, holding that ADAA section 1004(b)

applied by its terms only to the amendments made in section 1004(a) and that the supervised release language of section 1002 became effective on October 27, 1986. Section 1002 changed the post-confinement monitoring provisions for crimes punishable under 21 U.S.C. § 841(b)(1)(A) & (B) (Supp. IV 1986), from special parole to supervised release. Section 1004 changed "special parole" to "supervised release" where those words "appear[ed]" in "[t]he Controlled Substances Act." According to the interpretation of the Ninth and Third circuits, section 1004(a) acts on other penalty provisions, *e.g.*, 21 U.S.C. § 845 (Supp. IV 1986), that, unlike the section 841(b)(1)(A) & (B) provisions, were not amended by other provisions of the ADAA. Consequently, since there was no provision delaying the effective date of any portion of section 1002, the section 1002 provisions became effective in their entirety on October 27, 1986.

The Ninth Circuit addressed the question in *Torres*, 880 F.2d at 114-15. In *Torres* the court noted that under pre-October 27, 1986 law no special parole term was applicable to the defendant's crime—possession with intent to distribute more than five kilograms. *Id.* (citing 21 U.S.C. § 841(b)(1)(A) (Supp. III 1985)). However, the court further held that the supervised release provisions of ADAA section 1002 became effective on October 27, 1986, and that the defendant whose February 18, 1987 offense occurred after that date, but before November 1, 1987, should have been sentenced to a mandatory term of five years of supervised release. *Id.* at 115.

The Third Circuit dealt with this issue in *Gozlon-Peretz*, 894 F.2d 1402, and *Oleck*, 894 F.2d 1406. The defendant in *Gozlon-Peretz* had been convicted for, *inter alia*, possession with intent to distribute more than one kilogram of cocaine in February of 1987. The Third Circuit held that both the penalty and the post-confinement monitoring provisions of the ADAA became effective on October 27, 1986 and that the defendant was subject to a mandatory term of supervised release. That court noted that " '[g]iven the relatively long periods of

incarceration required by these sections, by the time most of these defendants returned to the community, the supervised release provisions of the Sentencing Reform Act would be in effect, and ... by the time some of the defendants served their long mandatory minimum terms of imprisonment, the Parole Commission would no longer be in operation.'" *Gozlon–Peretz*, 894 F.2d at 1405 (quoting Slawsky, *Looking at the Law*, 53 Fed. Probation 69, 86 (1989)). In *Oleck* the Third Circuit held that a conviction involving 500 grams or more on July 1, 1987, also required the imposition of supervised release.

## C. *Effective Date of Supervised Release Terms*

We find the approach of the Third and Ninth Circuits compelling. ADAA section 1004(b) by its plain meaning applies only to section 1004(a). Section 1002 is universally held, in all respects except supervised release, to have become effective on October 27, 1986. Nothing in the statute implies that a few words from the legislative enactment were to become effective at a different time than the rest of it. Moreover, such a holding would require us to adopt one of two conclusions: (1) Congress intended to require post-confinement monitoring before October 27, 1986, and after November 1, 1987, but not in the interim, or (2) Congress intended to have the special parole provisions carry over into the interim even where they had been expressly repealed. Neither proposition is logical. More importantly, neither has the remotest support in the language of the statutes.

By its unambiguous language, section 1004(b) applies only to section 1004(a). Reaching for any of the other suggested interpretations of the statute creates such problems that choosing those interpretations in the face of a plain reading is unquestionably inappropriate.

The sole difficulty with the approach of the Third and Ninth Circuits is that the provisions providing standards, guidelines, and definitions for supervised release did not become effective until November 1, 1987. Nevertheless, this is not fatal. The provisions providing these standards were valid law passed by both Houses of Congress and signed by the President, but whose effective date was statutorily set as November 1, 1987. The mandatory minimum term of confinement to which Brundage was sentenced necessitated that his term of supervised release could not begin until after the provisions had become effective. As the Third Circuit correctly observed, "by the time [the defendant] return[s] to the community, the supervised release provisions of the Sentencing Reform Act would be in effect...." *Gozlon–Peretz*, 894 F.2d at 1405. Had Brundage been sentenced as the District Court originally ordered, and as we now hold that section 1002 requires, he could not have suffered any prejudice from a lack of Sentencing Commission standards to guide the court because he would have been sentenced only to the statutory minimum period of four years of supervised release. The statute effective on the date of his crime compelled this result.

## CONCLUSION

We conclude that ADAA section 1002 became effective in its entirety when it was enacted on October 27, 1986. Consequently 21 U.S.C. § 841(b)(1)(B)(ii)(II) (Supp. IV 1986) required that Brundage be sentenced to a four-year term of supervised release. The District Court's order amending Brundage's sentence "by striking the words 'FOUR (4) YEARS of Supervised Release' and inserting in their place 'THREE (3) YEARS of Special Parole'" is hereby

*Vacated.*