**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Randolph BLACKMON, Defendant–Appellant.**

No. 88–6201.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted June 11, 1990.

Decided Sept. 19, 1990.

(argued), Memphis, Tenn., for plaintiff-appellee.

Randolph Blackmon, Otisville, N.Y., Avis Topps, Memphis, Tenn., for defendant-appellant.

Before KRUPANSKY and NORRIS, Circuit Judges; and MILES, Senior District Judge.*

KRUPANSKY, Circuit Judge.

Defendant-appellant, Randolph Blackmon (Blackmon), has appealed from the district court's denial of his motion for correction of sentence, pursuant to Fed.R.Crim.P. 35, in which he challenged the district court's imposition of a four-year term of special parole as part of his sentence resulting from a drug conviction.

On May 9, 1988, Blackmon pleaded guilty to one count of possession with intent to distribute two kilograms of cocaine on September 9, 1987, in violation of 21 U.S.C. § 841(a)(1) (1986). The district court thereafter sentenced Blackmon to five years of imprisonment to be followed by a four-year special parole term, pursuant to 21 U.S.C. § 841(b)(1)(B) (1986).[1]

On September 14, 1988, Blackmon filed a Rule 35 motion challenging the imposition of the four-year special parole term. He argued that the plain language of section 841(b)(1)(B) (1986) in effect at the time he committed his offense did not authorize the imposition of a *special parole* term, but rather it provided for a term of *supervised release*. Blackmon further urged that the imposition of a term of supervised release

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Van S. Vincent, Asst. U.S. Attys., Stuart J. Canale, Asst. U.S. Atty.

* The Honorable Wendell A. Miles, United States Senior District Judge for the Western District of Michigan, sitting by designation.

1. 21 U.S.C. § 841(b)(1)(B) (1986) provides, in pertinent part:
(b) **Penalties**
... any person who violates subsection (a) of this section shall be sentenced as follows:
(1)(B) In the case of a violation of subsection (a) of this section involving—
* * * * * *

(ii) 500 grams or more of a mixture or substance containing a detectable amount of—
* * * * * *
(II) cocaine ...
such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years.... Any sentence imposed under this subparagraph shall ... include a term of supervised release of at least 4 years in addition to such term of imprisonment....

would also be improper in the case at bar, because the phrase "supervised release" contained in § 841(b)(1)(B) (1986) did not become effective until November 1, 1987, which was after the commission of his crime. Therefore, Blackmon reasoned that the district court lacked statutory authority to impose either a four-year special parole term *or* a term of supervised release. On September 26, 1988, the district court denied Blackmon's motion, concluding that the four-year special parole term was properly imposed.

In 1970, Congress enacted the Controlled Substance Act.[2] This Act criminalized the possession with intent to distribute certain narcotics, including cocaine. 21 U.S.C. § 841(a)(1) (1970). The original version of the relevant penalty provision, 21 U.S.C. § 841(b) (1970), provided that a person convicted under § 841(a) was subject to a prison term of up to 15 years to be followed by a mandatory term of special parole of at least three years.

In 1984, Congress amended the Controlled Substance Act by revising the original version of section 841(b) to create more stringent penalties for drug offenders. The 1984 revision subdivided the penalty provision into two subsections, § 841(b)(1)(A) and (B), and correlated penalties to the volume of drugs involved. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 502, 98 Stat. 1976, 2068 (1984). Either intentionally or inadvertently, Congress omitted the mandatory special parole term in the 1984 version of section 841(b)(1)(A), which applied to offenses involving one or more kilograms of cocaine. On the other hand, section 841(b)(1)(B) as codified by the 1984 amendment, which applied to offenses involving less than a kilogram of cocaine, retained the special parole term that attached to a conviction. Thus, the 1984 amendment created an anomaly in that small-volume drug dealers were subjected to a mandatory special parole term while the large-scale drug offenders were exempted from any mandatory term of special parole.[3]

In 1986, Congress, with the promulgation of the Anti–Drug Abuse Act of 1986 (the ADAA),[4] again amended the Controlled Substance Act by repealing the existing penalty provision of 21 U.S.C. § 841(b) (1984) and replacing it with a rewritten version identified as 21 U.S.C. § 841(b) (1986). In the 1986 codification of § 841(b), Congress, in addition to creating four levels of penalties correlated to the amount of the narcotics involved, attached a mandatory term of "supervised release" to *all* sentences imposed pursuant to § 841(b). Accordingly, subsequent to October 27, 1986, the effective date of the ADAA, all references to "special parole" in the 1986 version of § 841(b) were abandoned.

Section 1004 of the ADAA substituted the characterization of "supervised release" in place of "special parole" wherever the latter phraseology appeared in the Controlled Substance Act, 21 U.S.C. §§ 801–904 (1986).[5] Although § 1004 was included in the ADAA when it became effective on October 27, 1986, the effective date of

---

**2.** Controlled Substance Act, Pub.L. No. 91–513, § 401, 84 Stat. 1236, 1260 (1970).

**3.** The Tenth Circuit stated:

The 1984 Amendments produced the odd result that special parole terms could not be imposed on large volume narcotics offenders but were mandatory as to those convicted of dealing smaller amounts of narcotics. The court, in *United States v. Sanchez,* 687 F.Supp. 1254, 1256 (N.D.Ill.1988), commented on this oddity: "What seems to have happened is that the people who drew up the statute slipped a cog."

*United States v. Levario,* 877 F.2d 1483, 1486 n. 6 (10th Cir.1989).

**4.** The Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1002, 100 Stat. 3207, 3207–2 to –4 (1986).

**5. Sec. 1004. Elimination of Special Parole Terms.**

(a) The Controlled Substances Act and the Controlled Substances Import and Export Act are amended by striking out "special parole term" each place it appears and inserting "term of supervised release" in lieu thereof. (b) The amendments made by this section shall take effect on the date of the taking effect of section 3583 of title 18, United States Code.

The Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1004, 100 Stat. 3207, 3207–6 (1986).

§ 1004, by specific congressional direction, was deferred until November 1, 1987.[6]

The conflicting effective dates of the 1986 codification of § 841(b) and section 1004 of the ADAA created a "gap period" between October 27, 1986, when the general provisions of ADAA, including amended § 841(b), went into effect, and November 1, 1987, when section 1004 of ADAA became effective. It is this "gap period" which gives rise to Blackmon's argument on appeal.

As stated before, Blackmon has urged that, since his offense was committed during this "gap period," the district court was without statutory authority to impose either a term of supervised release, because the court was not vested with the authority to do so until November 1, 1987, or a special parole term, because the court had been divested of authority to mandate a special parole term on October 27, 1986, when § 841(b) was amended and the phrase "special parole" was removed from that section.

In three recent opinions, the D.C., Third, and Ninth Circuits have corrected this congressional oversight by concluding that the terms of supervised release contained in the 1986 version of § 841(b) became effective on October 27, 1986, along with the remaining provisions of the ADAA. *United States v. Brundage*, 903 F.2d 837 (D.C. Cir.1990); *United States v. Gozlon–Peretz*, 894 F.2d 1402 (3d Cir.1990), *cert. granted in part*, —— U.S. ——, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990); *United States v. Torres*, 880 F.2d 113 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990).[7] In *Gozlon–Peretz*, the defendant had been convicted for possession with intent to distribute more than one kilogram of cocaine in February of 1987. The Third Circuit's decision, which essentially echoed the conclusions of the D.C. and Ninth Circuits' pronouncements, decided that both the penalty and the post-confinement monitoring provision of the 1986 version of § 841(b) became effective with the ADAA on October 27, 1986, and that the defendant was accordingly subject to a term of supervised release mandated therein. The court reasoned that "absent an indication to the contrary, a statute takes effect on that date of its enactment." *Gozlon–Peretz*, 894 F.2d at 1404; *accord United States v. Stillwell*, 854 F.2d 1045, 1047 (7th Cir.), *cert. denied*, 488 U.S. 973, 109 S.Ct. 508, 102 L.Ed.2d 544 (1988). Section 1004 of the ADAA amended the Controlled Substance Act "to effectuate the change from special parole to supervised release for all those offenses for which the ADAA had not already implemented supervised release." *Gozlon–Peretz*, 894 F.2d at 1405 n. 4. Accordingly, the disparate effective dates of § 1004 and the 1986 version of § 841(b), when construed interdependently, are not in conflict. *Gozlon–Peretz*, 894 F.2d at 1405 n. 4 ("The 'section' referred to in § 1004 means only § 1004 itself, not the entire ADAA...."). The statutory construction adopted by the D.C., Third, and Ninth Circuits ameliorates the disruptive conflicts that have resulted from facially irreconcilable interpretations. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (statutes must be interpreted with a view toward avoiding absurd results and harmonizing internal inconsistences).

Moreover, there are little, if any, effective differences between the two post-confinement monitoring procedures—special parole and supervised release—that would pose an obstacle to the proposed statutory construction interpreting the effective dates of the statutes here in issue.[8]

**6.** Although the ADAA, including the 1986 version of § 841(b), became effective on October 27, 1986, the date on which the President signed the bill, the effective date of section 1004 of the ADAA, by specific congressional mandate, was deferred until November 1, 1987—the effective date of the Sentencing Reform Act, 18 U.S.C. § 3551, *et seq.*, including 18 U.S.C. § 3583. Sentencing Reform Act Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985).

**7.** Recognizing the existing conflict between the circuits, this Court finds the reasoning of the D.C., Third, and Ninth circuits more convincing in the resolution of this paradox.

**8.** The United States Parole Commission, which administers the special parole terms, will have expired by operation of law in 1992.

[G]iven the relatively long periods of incarceration required by these sections, by the time

This court accordingly adopts the reasoning of the D.C., Third, and Ninth Circuits in *Brundage, Gozlon–Peretz,* and *Torres,* respectively, and Blackmon should be sentenced to a mandatory term of supervised release pursuant to the 1986 version of § 841(b).

Section [841(b) (1986)] held, in all respects except supervised release, to have become effective on October 27, 1986. Nothing in the statute implies that a few words from the legislative enactment were to become effective at a different time than the rest of it. Moreover, such a holding would require us to adopt one of two conclusions: (1) Congress intended to require post-confinement monitoring before October 27, 1986, and after November 1, 1987, but not in the interim, or (2) Congress intended to have the special parole provisions carry over into the interim even where they had been expressly repealed. Neither proposition is logical. More importantly, neither has the remotest support in the language of the statutes.

*Brundage,* 903 F.2d at 843.

This case is hereby REMANDED to the district court to correct the judgment order to technically conform Blackmon's sentence with this decision by resentencing him to a four-year term of supervised release instead of the four-year term of special parole heretofore imposed by the trial court.

---

most of these defendants returned to the community, the supervised release provisions of the Sentencing Reform Act would be in effect, and ... by the time some of the defendants served their long mandatory minimum terms of imprisonment, the Parole Commission would no longer be in operation to supervise special parole terms.

*Gozlon–Peretz,* 894 F.2d at 1405 (quoting Slawsky, Looking at the Law, 53 Federal Probation 69, 86 (June 1989)). Consequently, there is no evidence of prejudice resulting from Blackmon being sentenced to a four-year term of supervised release.