28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey Elden EHRLER, Defendant-Appellant.
 No. 93-4375.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1994.
 
 Before GUY and BOGGS, Circuit Judge, and WOODS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Jeffrey Elden Ehrler, appeals from the district court's order revoking his term of supervised release and committing him to the custody of the Attorney General for nine months. Ehrler challenges the district court's authority to do this, given that he already had served his initial sentence and an additional eight-month period of incarceration for a special parole violation. He contends that after serving the additional period of incarceration he could not have been sentenced to another term of supervised release, and thus there was no term of supervised release for the district court to revoke. Finding merit to the arguments Ehrler has raised, we vacate the district court's order and remand.
 
 I.
 
 2
 On August 17, 1987, Ehrler pled guilty to one count of distribution of cocaine, in violation of 21 U.S.C. Sec. 841. The district court thereafter sentenced Ehrler to five years' imprisonment with a supervised release term of three years. Ehrler was released from prison on January 4, 1991.[1]
 
 
 3
 In an order dated May 22, 1991, the district court amended Ehrler's term of supervised release to a term of special parole. Approximately four months later, Ehrler was arrested on a parole violation warrant; his special parole was revoked and he was returned to prison. Ehrler then filed a 28 U.S.C. Sec. 2255 motion, in which he contended that his original term of supervised release should be reinstated because special parole could not be imposed during the time period in which he was sentenced.
 
 
 4
 On April 5, 1993, Ehrler was re-paroled. He again got into trouble, and, on July 21, 1993, a parole violator's warrant was issued for his arrest.
 
 
 5
 On July 26, 1993, Ehrler filed a Fed.R.Crim.P. 35 motion again asking the court to revise his original sentence by changing the term of special parole back to a term of supervised release. In an order dated September 3, 1993, the district court, citing an intervening Supreme Court case, issued an order amending the sentence as requested by Ehrler; changing his sentence back to supervised release; and quashing the July 21, 1993, parole violation warrant as incorrectly issued. The court also issued its own bench warrant for Ehrler based upon its belief that Ehrler's actions resulted in a violation of the terms and conditions of his supervised release. At the time of this order, Ehrler was a fugitive from the parole warrant.
 
 
 6
 Ehrler turned himself in on October 4, 1993. He then filed a motion to quash the supervised release warrant, dismiss the revocation proceedings, terminate supervised release, and order his immediate release. A preliminary hearing was held, and the magistrate judge, without ruling on Ehrler's motion, found there was probable cause for the issuance of the supervised release warrant. A hearing was then held before the district court; the court, without discussion, denied Ehrler's motion and held that Ehrler had failed to show cause why his supervised release should not be revoked. On December 6, 1993, the court revoked Ehrler's term of supervised release and committed him to the custody of the Attorney General for nine months.
 
 II.
 
 7
 The sole issue Ehrler raises on appeal is whether the district court had the authority to amend his sentence from special parole to supervised release and then commit him to the custody of the Attorney General. Because this is a question of law, our review is de novo. United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 500 U.S. 933 (1991).
 
 
 8
 When Ehrler was initially sentenced, there was relatively widespread confusion about whether supervised release or special parole applied to various drug offenses. Ehrler was sentenced during what has been commonly referred to as the "gap period"--a period of time during which it was unclear whether a court could impose a term of either supervised release or special parole. United States v. Blackmon, 914 F.2d 786 (6th Cir.1990). This period ran from October 27, 1986, the date Sec. 841(b) was amended and the phrase "special parole" was removed from that section, to November 1, 1987, the effective date of the Anti-Drug Abuse Act of 1986 (the ADAA),[2] which attached a mandatory term of "supervised release" to all sentences imposed pursuant to Sec. 841(b). See Blackmon, 914 F.2d at 789. Courts frequently attribute this "gap period" to congressional oversight. See id.
 
 
 9
 The "gap period" was a confusing time for many courts, and this in turn spawned numerous appeals in which defendants challenged a sentencing court's authority to impose a term of special parole in lieu of supervised release. In time, each circuit addressed the issue of whether supervised release or special parole was to be imposed for Sec. 841(b) offenses committed between October 27, 1986, and November 1, 1987. Following the lead of other circuits, on September 19, 1990, in the case of Blackmon, this court held that the requirement that a term of supervised release be imposed became effective on October 27, 1986, along with the remaining provisions of the ADAA. Id.
 
 
 10
 Here, the indictment charged Ehrler with distributing cocaine on or about June 27, 1987, making this a "gap" case. The district court initially sentenced Ehrler to a term of supervised release; however, on May 22, 1991, at the request of the North Carolina parole authorities, the court amended Ehrler's term of supervised release to a term of special parole. The court's action occurred after the Blackmon decision was announced.
 
 
 11
 On September 3, 1993, the district court revisited Ehrler's sentence. The court began its analysis by noting that there was substantial confusion surrounding Sec. 841(b) offenses committed during the "gap period." The court then held, based on intervening cases, including our decision in Blackmon, that special parole terms could not be imposed for offenses committed during that time. Accordingly, the court vacated its order of May 22, 1991, and reimposed its initial sentence of five years' imprisonment and three years of supervised release.
 
 
 12
 In reinstating the initial term of supervised release, the district court observed that there is a "trend in some areas of the country ... that suggests that supervised release can only be violated once." (App. 42). This observation was relevant because Ehrler previously had been released, re-incarcerated, re-released, and was currently in violation of the terms of his re-release. Under this scenario, the court was rightfully concerned that, by reinstating Ehrler's term of supervised release and by finding him in violation of these terms, it was, in effect, finding Ehrler had violated the terms of his supervised release for a second time. Nevertheless, the court took solace in the fact that the rule preventing a defendant from violating supervised release more than once "is not the law of this Circuit at this time." (App. 42) (emphasis added). Five days later that changed.
 
 
 13
 On September 8, 1993, this court decided the case of United States v. Truss, 4 F.3d 437 (6th Cir.1993), in which the question was "whether, after revoking supervised release, the district court has the authority ... to sentence [a] defendant to a term of imprisonment and to order a new term of supervised release." Id. at 438. After reviewing relevant statutory language and the decisions of other circuits, this court answered the question in the negative. If a sentencing court finds that a defendant has violated the terms of his supervised release, the court can revoke the supervised release and impose an additional prison term; however, the court cannot at the same time include an additional term of supervised release. Both Ehrler and the government agree that this is the rule, but disagree as to how it applies here.
 
 
 14
 The government argues the district court's order should be affirmed on two grounds. First, the government notes that the court's order of December 6, 1993, does not impose any new term of supervised release. Thus, as the government reasons, there is no violation of Truss because after Ehrler serves his additional nine-month sentence his sentence will be completed. We do not dispute the merits of this contention; however, this does not resolve the issue. Ehrler has already served an eight-month period of incarceration in addition to his initial sentence. Ehrler argues that under Truss, after he completed his second sentence, the court had no authority to impose an additional supervised release term. The government does not address this point.
 
 
 15
 The government also contends that supervised release can be revoked only by order of the sentencing court. Here, as the government notes, the district court's December 6 order was the first and only revocation of Ehrler's supervised release; the intervening decisions to parole him and revoke his parole were done independently of the court, by the parole commission. Moreover, the court's jurisdiction over Ehrler's case extended for eight years--the length of the prison term imposed, plus the three-year term of supervised release that was originally imposed. Thus, as the government reasons, there is no violation of Truss since the district court still had jurisdiction over Ehrler, and its order of December 6 was the first time the court chose to revoke Ehrler's term of supervised release.
 
 
 16
 While we believe there may be some technical merit to the government's position, we are reluctant to adopt it. First, the government has not cited any authority to support its reasoning. Second, we believe it is best to analyze this issue as though Ehrler always had been subject to a term of supervised release and to treat the unauthorized modification as a nullity. Thus, when Ehrler was returned to prison as a parole violator, had it been the court revoking a period of supervised release, it would have had no authority to impose an additional period of supervised release. The court would not have been in a position then to later revoke that term of supervised release. Admittedly, Ehrler may benefit from this interpretation. One can only speculate what the district court would have done if it, instead of the parole commission, had first dealt with Ehrler as a violator. Nevertheless, someone must bear the burden of the district court's error, and we do not believe it should be Ehrler.
 
 
 17
 REVERSED and REMANDED, and it is ORDERED that defendant be released immediately.
 
 
 
 *
 Honorable George E. Woods, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Ehrler was released under a mandatory release plan, whereby a prisoner is released after serving two-thirds of the sentence imposed
 
 
 [2]
 The Anti-Drug Abuse Act of 1986, Pub.L. No. 99-570, Sec. 1002, 100 Stat. 3207, 3207-2 to -4 (1986)